Bertram Harnett, J.
Can the Town of Hempstead require a commercial marina operator to pay rent for piers, pilings and floats maintained on town underwater lands? Does it matter if the installations are primarily used for access to the marina property upland? Suppose the operator conducts a dock rental business on the town-owned portions ?
Oceanside Yacht Harbor, Inc. (called “ Yacht Harbor ”) owns about 900 feet of frontage on the banks of East Rockaway Channel, a navigable waterway. The land under those tidal waters belongs to the Town of Hempstead, which derives its title from colonial patents.
Yacht Harbor’s property is zoned for business use and, for approximately 10 years, has been used as a commercial marina. Its docks extend from Yacht Harbor’s property line out into East Rockaway Channel for distances up to 100 feet. The marina can accommodate about 150 boats for docking rental, 20 boats moored in slips on Yacht Harbor’s side of the high-water mark, which may be deemed the defendant’s own property, and 130 boats moored on the town’s side of the property line. Most of the boats are in the water only from April 30 to November 1 of each year.
Yacht Harbor’s docks are of the floating variety, being underlined with a buoyant material to enable them to stay above water, and are secured into place by piles driven into the land under water. When the docks are in place, the unobstructed width of East Rockaway Channel is about 175 feet at the northerly end of the Yacht Harbor property and about 350 feet at the southerly boundary. Without dispute, passage on the navigable portion of the waterway is not interfered with by Yacht Harbor’s docks. No claim is made of any public disruption.
In 1960, the Town Board of the Town of Hempstead enacted Resolution No. 755-1960, ostensibly pursuant to Ordinance No. 39-1958, authorizing a permit to Yacht Harbor’s predecessors to maintain docks on condition that they enter into a lease with the town for any use of the town land under water. Yacht Harbor refused to enter into the lease and insists upon its right to maintain its docks upon the town-owned land under water without payment of rent. The town, on the other hand, seeks to hold Yacht Harbor liable for reasonable rentals and asks for an *6 adjudication of its right to require a lease for the use of the underwater lands.
While the Yacht Harbor marina has been in operation for about 10 years, using town-owned underwater lands,, without complying with the leasing condition of its permit, the town has not appeared to have moved against its continued operation. Even in this proceeding, the town does not rely on any claim of any imperfect permit compliance. Rather, the town now sues Yacht Harbor for the fair rental value of its underwater lands as a simple property matter, also demanding repossession if a lease on reasonable terms is not executed. It argues that under section 1 of article VIII of the New York State Constitution, it cannot give away any of its property to private corporations, and that under section 302.0 of the Nassau County Civil Divisions Act (L. 1939, chs. 273, 710-717, as amd.), it has the authority to lease ‘ ‘ common lands ’ ’. Yacht Harbor defends that by virtue of its riparian rights it is using what is lawfully its own and the town cannot charge for it.
From the statement of the parties and the testimony, it is clear that this is a “ test case ” designed to test the town’s ability to charge rents to marina operators using town underwater lands for footings for their pier, dock and float installations. In view of the increasing boating uses of today, the issue is not of small importance.
Although the town is the owner of the land under water, it does not possess all the interests which exist in the property, since its “ ownership ” is subject to the legal rights of others. Regardless of who owns legal title to the underlying land, a navigable waterway is a form of public highway. (Macrum v. Hawkins, 261 N. Y. 193.) Property rights arise as a result of ownership of the land on the banks of such a waterway,, which are known as riparian rights. These are, in general, rights to use the waterway and to have access to it and its navigable portions. (City of New York v. Wilson & Co., 278 N. Y. 86.) These rights are not merely easements (Lawrence v. Behncke, 150 N. Y. S. 2d 494) but are incident to the right of property on the banks of the water. (Smith v. City of Brooklyn, 160 N. Y. 357.) They are inherent in ownership of the adjacent upland. (United Paper Board Co. v. Iroquois Pulp & Paper Co., 226 N. Y. 38.)
In Town of Brookhaven v. Smith (188 N. Y. 74) the upland owner had erected a pier upon land under water in Great South Bay, owned by the Town of Brookhaven under some of the same patents as granted the land to the Town of Hempstead. The *7 town sought to bar the pier since it was erected without its permission. The Court of Appeals noted that (p. 84): “ In this country it has generally been held that the upland owner has the additional right of constructing a proper pier, or landing for the use of himself and the public * * # (Yates v. Milwaukee, 10 Wall. 497), and since the decision in Rumsey v. N. Y. & N. E. R. R. Co., [133 N. Y. 79], that is the rule in this State ”. (Town of Brookhaven v. Smith, supra, p. 84, citing Jenks v. Miller, 14 App. Div. 474 and City of Brooklyn v. Mackay, 13 App. Div. 105.)
The Court of Appeals further noted at page 87 that the upland owners: ‘1 have, simply, made their right of access practical. It is a general rule that when the use of a thing is granted, everything is granted by which the grantee may enjoy such use. By analogy, we may reason that the riparian owner’s right of access to the navigable waters in front of his upland comprehends necessarily and justly, whatever is needed for the complete and innocent enjoyment of that right ”.
The Court of Appeals continued this view of riparian rights 15 years later in Hinkley v. State of New York (234 N. Y. 309).
Another 14 years later, the question was discussed in Matter of Del Balso Holding Corp. v. McKensie (271 N. Y. 313). The petitioner there was an upland owner who desired to construct piers on land under water in Westchester Creek, for which the City of New York sought to exact rent. In view of conflicting and undetermined claims of ownership of the land under water, the Court of Appeals declined to order the City of New York to issue a permit for construction of the pier. However, the court clearly delineated the applicable rule when it stated that (p. 316): “ If the city is the owner of the land under water, the petitioner has no right whatever to enter thereon and build a pier, unless it owns adjacent upland. If the petitioner is an upland owner, it has the well-settled riparian right of access by means of a pier to navigable water in front of its upland, subject to the right of the public”. (Citing Town of Brookhaven v. Smith, supra, and Sage v. Mayor, 154 N. Y. 61.)
The town argues that if it were to permit Yacht Harbor, or any other marina operator, to make use of the town-owned land under water, it would be making a gift of publicly-owned property in aid of private individuals or corporations. (Cf. N. Y. Const., art. VIII, § 1.) This argument is not well taken, however, to the extent the upland owner is exercising a property right of his own. For, if the town owns its land subject to the riparian rights of the upland owner, no gift is being made to the upland owner when he uses only what belongs to him.
*8 There would seem to be no doubt on the existing authorities that Yacht Harbor is entitled, under the facts presented, to reasonable access from its own upland property to navigable waters. If the maintenance of an access pier or wharf with pilings driven into town-owned land portions were the only issue, it would appear simple enough that Yacht Harbor would be within its riparian rights as an upland owner and not subject to town rental exaction. However, the actual usage situation poses another issue. In addition to the construction which enables access from the land portion to the navigable waters, Yacht Harbor maintains a series of floats with boat slips which protrude like fingers from nine docks extending into the channel. These floats are maintained in part on piles driven into town-owned lands. They are not required for access in and out of the uplands, but instead are distinct rentable assets in the hands of Yacht Harbor. They represent a functioning business activity interposed between the uplands and the navigable water courses. Slip rentals are charged. It may well be that economic relationships exist between the separately charged docking areas and common facilities ashore. However, this does not preclude the simple fact that Yacht Harbor is charging people money for the use of public lands and making a private profit on that charge. At the same time, it excludes the general public from the use of these public lands in the absence of payment.
The evidence presented indicates that the town-owned areas set aside for summer docking rentals constitute a primary business activity of Yacht Harbor and contribute most heavily to its business values. While some of the boats might be hauled for winter storage at a separate charge, and some may buy gasoline and supplies from the upland owner, and other economic connections may appear, it is indisputable that the docking for hire, heavily preponderant on town land, is a separate and distinct primary activity.
The authorities indicate that riparian rights are essentially meant to encompass access rights. Black’s Law Dictionary (4th ed.) has a notation to the effect that: “ Generally speaking [riparian] rights are: (1) Use of water for general purposes, as bathing and domestic use; (2) to wharf out to navigability; (3) access to navigable waters. Hilt v. Weber, 252 Mich. 198, 233 N. W. 159, 168, 71 A. L. R. 1238 ’ ’. A careful analysis of the pertinent Court of Appeals authority indicates that, in the situation of this case, accessibility to navigable waters for the upland owner is at the essence of riparian rights. There appears no specific authority in this State where there is a separate *9 economic usage interposed. The public policies involved and rationale for riparian rights suggest to the court, however, that profit-making business uses on another’s property are beyond the characterization of riparian rights.
An extreme example may help isolate a point. Assume an upland property owner decides to build a restaurant on stilts on town underwater lands. He puts his parking lot on his whole upland property which is small and builds a pier connecting his land to the restaurant on the water over the town land. Then he creates a mooring float for yachts on the seaward side of his restaurant. Should he not in all fairness pay rent to the town for his restaurant land? The marina situation here is, of course, more ambiguous, yet the damning point persists of an unequivocal business activity created quite independently of the need to derive access to the upland property. There is involved a matter of degree.
The synthesis of the foregoing principles is that the town may not charge for rents for its underwater lands in the instance of docks and floats which are primarily for access from navigable waters to upland property, but the town may charge the upland owner for use of the town’s underwater .lands for docks and floats and other installations maintained there as distinct activities in their own right. The court finds from the testimony that, because of tidal action and silting, at least a portion of the docks jutting from Yacht Harbor’s property is necessary to preserve its access to the navigable waters. However, even more apparent is the substantial land devotion to the distinct activity of commercial docking over town underwater lands.
Accordingly, the court finds some rent is due to the town. The amount will be the fair rental value of the portions not reasonably necessary for access. The town’s insistence on a lease is justified to the extent of the nonaccess use allocation ultimately determined. The parties have stipulated that their submission here was with respect to liability only, and that the question of damages would be the subject of separate trial. Respecting the stipulation of the parties, the court will also order that no mandatory action be taken with respect to a lease until there is a final determination or agreement with respect to damages, or more specifically rent allocation, in accordance with the principles declared above. This is because the principles which go into the allocation will be relevant to the scope of the lease.
This opinion does not, of course, impinge upon the rights of the town to require a permit or license for the operation of a marina or docking facility of any kind, nor is it any restriction on the taxing power of the town. Obviously, questions of legi *10 tímate exercise of the police power and the taxing power of the municipality raise considerations quite different from the taking without compensation of property rights of private persons and companies in the form of charging town rental for something already possessed.
The caption of this proceeding should be amended to delete Oceanside Small Craft Marina Inc. since the court was advised that the corporation was not served.