TOWN OF HEMPSTEAD et al., Respondents, *v.* OCEANSIDE YACHT HARBOR, INC., Appellant.

Second Department, February 14, 1972.

*Lapp, Schacher & Bradie* (*Charles E. Lapp, Jr.,* of counsel), for appellant.

*George C. Pratt,* special counsel to *Howard E. Levitt, Town Attorney,* for respondents.

HOPKINS, Acting P. J. By colonial grants the plaintiffs are the owners of the land under water adjacent to the upland owned by the defendant, bordering East Rockaway Channel. On the upland is a bulkhead from which ramps, rising and falling with the tide, are attached to floating docks. Mooring slips, also known as fingers, extend from the floating docks and are rented to the defendant's customers.

The plaintiffs sue to recover the reasonable rental value of the use and occupation of their land under water by the defendant in the operation of its business as a marina. The plaintiffs' theory is that the defendant, through the construction of the mooring slips, has ventured beyond the traditional riparian rights of an upland owner to such a degree as to trespass on the rights of the plaintiffs. The defendant in response claims that the riparian rights include the installation of docks, floats and mooring slips above the plaintiffs' land under water, for which use the defendant need not pay any compensation.

The Special Term, trying the case on the issue of liability alone, found in favor of the plaintiffs and directed an assessment of damages. The opinion of Special Term held (64 Misc 2d 4, 9) that "the town may not charge for rents for its underwater lands in the instance of docks and floats which are primarily for access from navigable waters to upland property, but the town may charge the upland owner for use of the town's underwater lands for docks and floats and other installations maintained there as distinct activities in their own right." We are unable to agree with the conclusion of the Special Term; and we reverse the resettled interlocutory judgment, direct dismissal of the amended and supplemental complaint, and grant judgment to the defendant upon its counterclaim.

The defendant, as an upland owner, has a right of access to and from the channel over the plaintiffs' foreshore (*Town of Brookhaven* v. *Smith,* 188 N. Y. 74) and that right follows the entire frontage of the defendant's property (*Tiffany* v. *Town of Oyster Bay,* 234 N. Y. 15). The right of access comprehends the reasonable, safe and convenient use of the foreshore for navigation, fishing and such other purposes as commonly belong to the riparian owner, exercised in a reasonable manner (*Tiffany* v. *Town of Oyster Bay, supra,* p. 21). The scope of what is a reasonable, safe and convenient use of the upland owner's riparian rights has been gradually defined on a case-to-case foundation.

Thus, it is clear that the right includes the power to build a pier, dock or wharf for the upland owner's use or for the use

of the public (*Saunders* v. *New York Cent. & Hudson Riv. R. R. Co.*, 144 N. Y. 75, 87; *Rumsey* v. *New York & New England R. R. Co.*, 133 N. Y. 79) or more than one pier or dock (*Barnes* v. *Midland R. R. Term. Co.*, 218 N. Y. 91, 97–98). Moreover, the right of access may be shared with others intent on crossing the land under water for purposes unrelated to the use of the upland (*City of New York* v. *Third Ave. Ry. Co.*, 294 N. Y. 238, 244). But the right of access cannot be expanded beyond the purpose denoted by the term "access"—for example, the exercise of the right does not extend to purposes extrinsic to commerce and navigation, such as the operation of a restaurant (*Matter of City of New York* [*Neptune & Emmons Aves.*], 280 N. Y. 604), amusement parks (*People* v. *Steeplechase Park Co.*, 218 N. Y. 459) or a plant for processing meat (*City of New York* v. *Wilson & Co.*, 278 N. Y. 86). Nor may the right be used so that public navigation is impeded (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74, 87, *supra*).

We must therefore look to the character and size of the defendant's activities on the land under water to determine whether under the circumstances they represent a reasonable exercise of its right of access. The evidence as to those activities is substantially undisputed. Thus, it was stipulated that the defendant "operates a marina on its upland, and in connection with that has nine floating docks which extend into East Rockaway Channel up to 100 feet, and that these docks are held in place or secured into place by piles which are driven into the land under water" and that "in October 1961 the Department of the Army issued a permit for the construction of 17 floats * * * to extend up to 100 feet into the waters of East Rockaway Channel." The marina provides repair service and gasoline, as well as storage for boats during the winter. The floating docks accommodate about 150 boats at mooring rental.

The Special Term found that the docks did not interfere with public navigation; and, indeed in 1960, the plaintiffs by resolution had authorized the installation of 16 docks by the defendant, declaring that the structures would not unreasonably obstruct the plaintiffs' waterways.[1] Thus the plaintiffs have

---

1. The permit issued under the resolution recited that it was granted "upon the condition that the applicants enter into a lease with the Town of Hempstead for those lands lying underneath and adjacent to the aforesaid structures." The lease was never executed. However, the plaintiffs in their brief disclaim any reliance on the acceptance of the permit by the defendant as a ground for holding it to the payment of rent, "because all parties desire to have the basic principle adjudicated."

acknowledged that the defendant's use of the foreshore by the floating docks is not a menace to public navigation.

The question is consequently narrowed to whether the extent of the defendant's use of its riparian rights and the rental of the mooring slips attached to the piles to members of the public owning boats constitute an unreasonable exercise of dominion over the plaintiffs' underwater land. As has been frequently said, the term '' reasonable '' is relative, taking on color and significance from the circumstances (cf. *United Paper Bd. Co.* v. *Iroquois Pulp & Paper Co.*, 226 N. Y. 38, 45). In this case, the plaintiffs introduced no evidence in the form of expert testimony that the defendant's use was unreasonable. Essentially, the plaintiffs contend that the defendant's use is unreasonable because it maintains a commercial operation, in which the riparian right is sold to others.

By itself, the erection of more than one dock is not unreasonable, if they are necessary to the upland owner's enjoyment of his riparian right of access (cf. *Barnes* v. *Midland R. R. Term. Co.*, 218 N. Y. 91, 97–98, *supra*). Nor do we find authority for restricting the right of access to the personal use of the upland owner; the rule is otherwise, for the owner may lease his property and docks to third parties (*City of New York* v. *Third Ave. Ry. Co.*, 294 N. Y. 238, 244–245; *Bedlow* v. *New York Floating Dry Dock Co.*, 112 N. Y. 263, 279–281; cf. *Moyer* v. *State of New York*, 56 Misc 2d 549; *Huguenot Yacht Club* v. *Lion*, 43 Misc. 2d 141).

We cannot say on this record that the defendant overstepped the bounds of reasonableness by renting the mooring slips to individual owners of boats, even though the number of boats is considerable. The policy of the State, since an early time in the history of our State, has been directed toward encouraging the private development of waterfronts, subject only to the condition that the use be reasonable and not obstructive of navigation (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74, 79–80, 97, *supra*). If a different policy is to be formulated at this time, favoring the right of the foreshore owner to be compensated when the riparian owner uses the right of access by operating a marina accommodating the mooring of a substantial number of small private boats, the change ought to be accomplished by the Court of Appeals which established the policy.

It follows that the resettled interlocutory judgment should be reversed, insofar as appealed from, on the law and the facts, with costs, the amended and supplemental complaint dismissed, and the defendant granted judgment on its counterclaim, declar-

ing that the defendant has the right to maintain the docks and piles in question.

SHAPIRO and GULOTTA, JJ., concur with HOPKINS, Acting P. J.; CHRIST and BENJAMIN, JJ., dissent and vote to affirm, on the opinion of the Special Term.

Resettled interlocutory judgment reversed insofar as appealed from, on the law and the facts, with costs; amended and supplemental complaint dismissed; and defendant granted judgment on its counterclaim, declaring that defendant has the right to maintain the docks and piles in question.