◼ In the Matter of HAHER's SODUS POINT BAIT SHOP, INC., Appellant, v RICHARD WIGLE et al., Constituting the Village of Sodus Point Zoning Board of Appeals, Respondents.—Judgment affirmed without costs. Memorandum: The Zoning Board of Appeals of the Village of Sodus Point denied in part petitioner's application for a special permit which would have allowed it to expand its commercial docking facilities and to continue certain uses of its present docking facilities. Special Term properly dismissed the petition seeking to annul that determination.

Petitioner's argument that it had a preexisting nonconforming use of its docking facilities is without merit.

The zoning law concept of "nonconforming use" protects landowners who have vested rights to use their land in a fashion later prohibited by restrictive zoning regulations (1 Anderson, New York Zoning Law and Practice §§ 6.01, 6.02 [2d ed]). In this case, however, petitioner does not own the land upon which its docks are built; its deed recites that the boundary of its land is the shoreline. Its docks extend 1.6 acres over the water of Sodus Bay. The water belongs to the State of New York.

Petitioner could have acquired a proprietary interest in the land beneath the water if it had applied for and obtained an easement from the State Commissioner of General Services (see, Public Lands Law § 3 [2]). This it failed to do. In fact, petitioner was warned on several occasions by the Office of General Services that its existing dockage constituted an encroachment of approximately 1.6 acres on State-owned land underwater, and that its continued use would require an easement.

Nor did petitioner acquire any vested rights in the use of these docks because it and its predecessors in title obtained the necessary permits from the Army Corps of Engineers and the Department of Environmental Conservation. Each Federal permit specified that it "does not convey any property rights" and that the "permit does not obviate the requirement to obtain State or local assent required by law for the activity authorized herein". The Department of Environmental Conservation permits allowing petitioner's predecessor to build the first 150 feet of dockage provided that the granting of the permit "does not relieve the applicant from the responsibility of obtaining any grant or easement from the Bureau of Surplus Property of the Office of General Services which may be required for any encroachment on State owned lands

underwater". By their own terms, these permits did not convey any property interest and petitioner's reliance upon them as an entitlement to an exemption from local regulation is misplaced (see, Matter of Rottenberg v Edwards, 103 AD2d 138).

Petitioner owns less than one-half acre of land adjoining Sodus Bay, with less than 75 feet of water frontage. Thus, petitioner is entitled to certain common-law riparian rights, including the right to construct a dock (Town of Islip v Powell, 78 Misc 2d 1007, 1013) and the right of "reasonable, safe and convenient access to the water for navigation, fishing and other uses as commonly belong to riparian ownership" (Tiffany v Town of Oyster Bay, 234 NY 15, 21). "The scope of what is a reasonable, safe and convenient use of the upland owner's riparian rights has been gradually defined on a case-to-case foundation" (Town of Hempstead v Oceanside Yacht Harbor, 38 AD2d 263, 264, affd 32 NY2d 859).

Petitioner's construction of commercial dockage over more than an acre and a half of public waters has exceeded the reasonable scope of the common-law rights it has acquired by virtue of its ownership of a small parcel of riparian land. The rights of riparian owners must yield to the State's exercise of police power (New York State Water Resources Commn. v Liberman, 37 AD2d 484, 488, appeal dismissed 30 NY2d 516). In the case of underwater land bordering the Village of Sodus Point, the Legislature has seen fit to delegate its police power to the village by passing Navigation Law § 46-a (2).

In enacting the Dockings and Moorings Law, the Village of Sodus Point exercised its police power in a fair and reasonable manner. It was entirely reasonable for the village to identify the rapid and uncontrolled commercial development of waterfront property as an area of local concern. The record establishes that many owners of waterfront property were building commercial docking facilities for profit to the detriment of the local residents. The marinas were making public access to the bay more difficult, and inadequate parking facilities caused boaters to fill the municipal parking lot with their cars and boat trailers.

In our view, the determination of the Board of Appeals is amply supported by substantial evidence and is not arbitrary. This court's review of such a determination is limited. Where there exists in the record conflicting evidence concerning the impact of a certain use, this court should not lightly substitute its judgment for that of the Board (Matter of Rottenberg v Edwards, 103 AD2d 138, 142-143, supra).

There was some evidence at the hearing that petitioner's dockage was beneficial to the area because it kept down weeds and caused boaters navigating through the channel to reduce their speed. However, there was also evidence that petitioner's present docks, before any proposed further expansion, jutted out so far into the navigational channel that boats navigating through the area were required to make a wide sweep around them into shallow water, creating a hazardous condition. In addition, several owners of neighboring riparian parcels voiced their opposition to any proposed expansion of petitioner's facility, because petitioner's docks would extend into the waters in front of their properties and interfere with their riparian rights, making it difficult if not impossible for them to expand their existing dock facilities and also conform with local regulation.

The action taken by the Board of Appeals reflects an appropriate balancing of the commercial interests of one landowner with the rights of all citizens to have access to the water, and the rights of the adjoining landowners to develop and enjoy their own facilities. Petitioner's application was not denied in its entirety. It may continue to maintain two 150-foot docks and several smaller ones, providing revenues from slip rental as well as access from the water to the bait shop and restaurant. Petitioner may continue to operate a boat launch. Requiring petitioner to reduce the magnitude of its operation is not unreasonable.

Finally, the village's approval of petitioner's parking lot plan on a one-year basis was not arbitrary and should be upheld. Petitioner's proposed solution to the parking problem resulting from its having only one available on-site parking space allocated specifically to accommodate boaters' vehicles was to rent a lot in another part of town and provide a shuttle van to transport boaters to their boats on an "as needed" basis. It was brought out at the public hearing on this special permit request that there could be no guarantees that the boaters would use this parking lot but, rather, they might continue to use the municipal lot and sometimes solve their parking problems by trespassing on the property of the other adjoining landowners. The Board's action, giving petitioner a year to demonstrate the feasibility of its parking plan, is reasonable and should be upheld.

All concur, except Balio, J., who dissents and votes to reverse and grant the petition, in the following memorandum.

Balio, J. (dissenting). I respectfully dissent.

Petitioner is the owner of a restaurant, bait shop and marina facility in the Village of Sodus Point. Prior to enactment of the Docks and Moorings Law by the Village in 1986, petitioner constructed and installed several floating docks at a cost in excess of $165,000. These docks were constructed over a period of several years pursuant to permits issued by the Department of the Army, Corps of Engineers (DOA) and the State Department of Environmental Conservation (DEC). The Docks and Moorings Law required persons installing docks, boathouses, mooring buoys and related facilities to obtain a special permit, but permanent docks constructed and utilized prior to enactment of the law were exempted from complying with the permit requirements. Persons who had constructed and utilized floating docks prior to the law's enactment were not similarly exempted from compliance. In an effort to comply with the law, petitioner applied to the Village Inspector for a special permit. Upon denial by the Inspector, petitioner then applied to the Village Zoning Board of Appeals (ZBA). The ZBA granted a permit as to three short docks as well as two northerly docks that extended 150 feet from the shoreline, but denied the application to the extent it sought a permit to continue its use of the two longer docks beyond 150 feet and to further expand the most northerly dock. Special Term summarily denied the instant petition, which sought to annul the ZBA's denial of the request pertaining to the longer docks and the imposition of a one-year limitation upon a permit granted for off-street parking.

Petitioner claimed that its construction and use of the longer docks for a distance of about 310 feet from the shoreline constituted a prior nonconforming use and that denial of its application to continue such use was, therefore, illegal, arbitrary and capricious. In my view, the majority has erred by summarily rejecting that claim. As an owner of lands along the shore, petitioner possesses certain common-law littoral rights, including the right to construct docks and related facilities for public and private purposes over waters owned by the State without the need for any land grant from the State *(Hinkley v State of New York,* 234 NY 309, 317-318; *Huguenot Yacht Club v Lion,* 43 Misc 2d 141, 147). One court has characterized the nature of this right as an implied license *(see, Moyer v State of New York,* 56 Misc 2d 549, 551-552). The littoral, or riparian, right may not, however, impede navigation *(Trustees of Town of Brookhaven v Smith,* 188 NY 74, 87) and must be exercised in a reasonable manner *(Tiffany v Town of Oyster Bay,* 234 NY 15, 21). The scope of a reasonable

use depends upon the circumstances of each case, and the mere fact that one maintains a highly commercial operation with several docks extending into the water does not amount to an unreasonable use *(Town of Hempstead v Oceanside Yacht Harbor,* 38 AD2d 263, 266, *affd* 32 NY2d 859).

Evidence was presented to the ZBA concerning the scope of petitioner's use, its relation to neighboring owners, and its effect upon navigation. While the ZBA made certain findings, its conclusions related to criteria set forth in the Docks and Moorings Law, and the ZBA made no finding as to the scope of riparian rights as a property concept. This was entirely proper, of course, because zoning laws regulate land use, not ownership *(see,* 4 Rathkopf, Zoning and Planning § 51.05, at 51-42 [4th ed]). Special Term denied the petition without a hearing and without indicating the basis for its decision. This court, therefore, has resolved a critical factual issue for the first time on appeal and I submit, has done so erroneously. Implicit in the issuance of the DOA permits was a consideration of navigational and property ownership concerns *(see,* 33 CFR 320.4 [a], [o]), and no expert testimony was presented to indicate that navigational safety or access to the navigable channel was, or would be, impeded. Based on this state of the record and with due consideration for the State's public policy directed toward encouraging private development of waterfronts, a conclusion that petitioner's use overstepped the bounds of reasonableness was not warranted *(Town of Hempstead v Oceanside Yacht Harbor, supra,* 38 AD2d 263, 266). At the very least, the issue should be remitted to Special Term for a hearing.

I strongly disagree with the court's conclusion that the Docks and Moorings Law amounts to a reasonable exercise of the police power insofar as it has been applied to the petitioner. A review of the public opinion responses to a survey conducted by the Village Board prior to enactment of the law indicates that the primary public concern was the commercial expansion that had been undertaken by petitioner. By exempting permanent docks from compliance without a similar exemption for petitioner's floating docks, the law clearly was drawn to discriminate against and to curtail petitioner's existing use. Neither the ZBA nor the majority has stated any reasonable or rational basis for the law's discriminatory treatment of preexisting uses, and the court's determination that application of the law to petitioner constitutes a reasonable exercise of the police power is unfounded.

Since petitioner's littoral rights constituted a sufficient prop-

erty interest for purposes of the doctrine of nonconforming use, there was no need for petitioner to acquire an easement *(see, Hinkley v State of New York, supra,* at 317-318). The Docks and Moorings Law imposes no requirement that an applicant posses an easement and the ZBA granted permits to petitioner even though it lacked an easement, thereby recognizing that an easement was not essential to a lawful use of docks. In this respect, I submit that the majority's position is somewhat inconsistent, because it would affirm the ZBA's grant of permits even though, in its view, petitioner was not the holder of any ownership interest. (I also note parenthetically that the State's insistence that petitioner obtain an easement because the docks extend more than 40 feet from the shoreline is of dubious validity because the 40-foot policy is contrary to the decisional law of this State *[see, Town of Hempstead v Oceanside Yacht Harbor, supra,* 38 AD2d 263, which upheld riparian rights as to docks extending 100 feet into the channel].) I conclude that since petitioner's prior nonconforming use complied with all then-existing land use regulations and permit requirements, the use was lawful and denial of the permit was arbitrary and improper *(see, Matter of Syracuse Aggregate Corp. v Weise,* 51 NY2d 278).

Imposition of a one-year limitation upon the grant of the parking permit was arbitrary and unreasonable. The ZBA imposed the limitation because, in its view, insufficient detail had been provided to enable it to conclude that adequate arrangements had been made for transportation of persons from the rented parking area to petitioner's facility, and a one-year period of actual operation would enable the ZBA to determine whether the arrangements were "adequate". The record before the ZBA contains specific details concerning petitioner's transportation arrangements, including a frequency schedule, mode of transportation and other details of operation. The ZBA's determination that insufficient details were presented is baseless, and the imposition of a time limitation based on that determination was improper. The apprehension that boaters would overcrowd municipal facilities is wholly irrelevant to the issue of whether the petitioner complied with the law *(see,* 2 Anderson, New York Zoning Law and Practice § 24.22 [3d ed]).

Finally, I conclude that substantial evidence to support the ZBA denial of petitioner's application was lacking. Substantial evidence is " 'the kind of evidence on which responsible person are accustomed to rely in serious affairs' " *(People ex rel. Vega v Smith,* 66 NY2d 130, 139, quoting *National Labor*

*Relations Bd. v Remington Rand,* 94 F2d 862, 873, *cert denied* 304 US 576). Issues concerning navigational safety, littoral rights and access to navigable waters are not the type of matters within the common understanding of zoning boards of appeal and in may view, they are serious matters that should not be decided based on the conclusory assertions of persons lacking any demonstrated expertise on those subjects *(see, Town of Hempstead v Oceanside Yacht Harbor, supra,* 38 AD2d 263). As previously noted, implicit in the issuance of DOA permits was a consideration of navigational and property ownership concerns, and no expert testimony was presented adverse to petitioner. A designer testified that there would be no interference with access to the navigable channel by riparian owners. The remaining evidence consisted of the opinions of various residents, some of whom opined that there would be interference with access and an imposition on safety and some who offered a contrary opinion. The ZBA also relied upon a public opinion survey conducted prior to enactment of the law. Reliance upon the public opinion survey, community pressure, general objections of Board members and the conclusory assertions of witnesses was improper in this case *(see, Matter of Tandem Holding Corp. v Board of Zoning Appeals,* 43 NY2d 801, 802; *Matter of Gernatt Gravel Prods. v Town of Collins,* 105 AD2d 1057, 1059; *Matter of Sullivan v Town Bd.,* 102 AD2d 113, 115, *appeal dismissed* 63 NY2d 952). Accordingly, I would reverse and grant the petition. (Appeal from judgment of Supreme Court, Monroe County, Siracuse, J.—art 78.) Present—Doerr, J. P., Denman, Pine, Balio and Davis, JJ.