THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* NEW YORK AND ONTARIO POWER COMPANY and Others, Respondents.

Third Department, January 5, 1927.

Waters and watercourses — action in ejectment as to bed of St. Lawrence river between south shore and Ogden island — one defendant owning property on shore has no title to bed — other defendant claims under two acts of Legislature, Laws of 1808, chap. 121, and Laws of 1826, chap. 280 — first act granted license which has expired — second act granted land under water below dam — present use does not interfere with navigation — no harm can be done to permit continuance of use until such time as State may desire to develop river.

This is an action in ejectment to recover possession of certain lands in the bed of the St. Lawrence river in the channel between the south shore and Ogden island. One defendant owns property on the shore and Ogden island while

the other claims rights in the bed of the stream by virtue of chapter 121 of the Laws of 1808 and chapter 280 of the Laws of 1826.

Chapter 121 of the Laws of 1808 granted a license merely which has expired, and chapter 280 of the Laws of 1826 granted the bed of the stream below the location of the present dam.

Since the dam is being maintained with the permission of the State, and since it does not interfere with navigation, no harm can be done by permitting the maintenance of the dam until such time as the State may desire to use the channel for the improvement of navigation, and, therefore, the defendants will not be ejected from the use of the bed of the stream for dam purposes.

APPEAL by the plaintiff, The People of the State of New York, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of St. Lawrence on the 20th day of March, 1926, upon the report of an official referee appointed to hear and determine the whole issues, as modified by an order entered in said clerk's office on the 13th day of April, 1926.

*Albert Ottinger, Attorney-General [C. S. Ferris, Deputy Attorney-General,* of counsel], for the appellant.

*Thomas Spratt [George E. Van Kennen* of counsel], for the respondent New York and Ontario Power Company.

*Andrew J. Hanmer,* for the respondent Frontier Corporation and others.

VAN KIRK, J.   The action is in ejectment to recover possession of certain lands in the bed of the St. Lawrence river, in the channel between Ogden island and the south shore, claimed by the defendants New York and Ontario Power Company, which we shall call the Power Company, and the Frontier Corporation.

The St. Lawrence river is a public navigable stream (*Matter of Long Sault Development Co.,* 212 N. Y. 1), which at the place in question is the boundary stream between Canada and the State of New York.   It is claimed that, due to a fall in the bed of the river, this channel of the St. Lawrence is not navigable in fact for a short distance; but it is navigable in law.   The general character of a stream as to being navigable is not changed by the fact that at a particular place it is not in fact navigable for boats. (*West Virginia P. & P. Co.* v. *Peck,* 189 App. Div. 286, 292, and cases cited.)   This channel carries about one-tenth of the flow of the river; that is, about 24,000 cubic feet per second.   A part of the St Lawrence is identified as the " Thousand Islands."   Channels between islands or between an island and the shore are part of the river.   Generally between the channel of a public stream and its shore there is non-navigable shallow water.   The power of the State extends over the shallows.   (*Greenleaf Lumber Co.* v. *Garrison,* 237 U. S. 251.)   The Power Company claims to own the dam extending

across this channel and certain hydraulic works connected therewith on the north end of the dam. It also claims certain lands below the dam, together with certain water rights and privileges connected therewith. These claims are asserted under two acts of the Legislature, chapter 121 of the Laws of 1808 and chapter 280 of the Laws of 1826. The defendant Frontier Corporation owns Ogden island and the uplands along the south shore of the river, but its claim which is in issue in this action is to certain lands in the bed of the stream. This claim is made as riparian owner or under a grant from riparian owners. It does not claim title to the bed of the stream under any grant, direct or mesne, from the State. The other defendants claim, under the Power Company, rights to use water taken from the pond above the dam for power purposes.

Rights and titles in the bed and waters of a navigable stream are controlled by the laws of the State in which the stream is. (*St. Anthony Falls Water Power Co.* v. *St. Paul Water Commissioners*, 168 U. S. 349; *United States* v. *Chandler-Dunbar Co.*, 229 id. 53.) It will be convenient to consider the law in this State in respect to such rights under three distinct classes: (1) In the bed of the stream; (2) in its waters; (3) in the riparian lands.

The title to the beds of boundary line streams, a *jus privatum*, is in the State as sovereign in trust for the people and so remains unless specifically granted. (*Smith* v. *City of Rochester*, 92 N. Y. 463, 479; *Matter of Long Sault Development Co.*, supra; *Greenleaf Lumber Co.* v. *Garrison*, supra.) The State may convey the title to the land under the waters as a naked land title. Such a conveyance gives no title to the waters and is generally subject to the sovereign right to control the stream. (*Lewis Blue Point Oyster C. Co.* v. *Briggs*, 198 N. Y. 287, 292.)

The waters of the stream are not separately owned by any one. The stream is a public highway. The State holds as trustee for the people the right to control the stream and its bed for commerce and navigation, a *jus publicum*. This is a sovereign right and generally may not be abdicated. But there is an apparent or partial exception to this rule. While the Legislature may not grant an unconditional title — one not subject to the paramount right of the State — in a public stream or in public waters for private use and purposes (*Langdon* v. *Mayor*, 93 N. Y. 129; *Williams* v. *Mayor*, 105 id. 419), it may for a good consideration and for the advantage of the public in aid of navigation and commerce grant unconditional rights in shore waters or in streams (*Coxe* v. *State*, 144 N. Y. 396), if such right when executed will not unreasonably interfere with the general use and control of the public waters. (*Matter of Long Sault Development Co.*, supra;

*Illinois Central R. R. Co.* v. *Illinois*, 146 U. S. 387, 452.) Such unconditional grants have the force of contracts. If the consideration is· the development of the thing granted, the grantee has that which has been called a franchise and has the stipulated time, or, in want of stipulation, a reasonable time to complete the development. Having completed the development he has then the equivalent of the unconditional grant. (*First Construction Co.* v. *State*, 221 N. Y. 295.) All grants of gift or grants for private beneficial use and not for the benefit of the public are conditional grants, made subject to the paramount right of the State to improve the stream. Conditional grants are in effect licenses only. For an extensive review of the authorities in this State, see *Appleby* v. *City of New York* (271 U. S. 364). All grants in navigable waters may be recaptured by the State when it determines to improve the stream for navigation. In adopting its plan for improvement it acts as sovereign and that plan is not subject to review in the courts. (*United States* v. *Chandler-Dunbar Co., supra.*) The recapture of property which the Legislature has unconditionally granted is a taking of property for a public use for which compensation must be paid (*Langdon* v. *Mayor, supra*); but, since all property and rights within a conditional grant are held subject to the paramount right of the State, the recapture thereof is not a taking within the meaning of the Constitution (Art. 1, § 6) and compensation may not be had therefor. The State in exercising its sovereign right is not subject to such burden. (*Lansing* v. *Smith*, 4 Wend. 9; *Union Bridge Co.* v. *United States*, 204 U. S. 364, 389; *Transportation Co.* v. *Chicago*, 99 id. 635; *Sage* v. *Mayor*, 154 N. Y. 61, 67.) Rights in the stream which would deprive the State of its power to improve it for navigation may not be acquired by adverse possession, since the State could not make such a grant. (*People* v. *Baldwin*, 197 App. Div. 285; affd., 233 N. Y. 672.) Whether such limited rights as the Legislature could unconditionally grant might be acquired by adverse possession the Court of Appeals has not decided. (*Hinkley* v. *State*, 234 N. Y. 309, 316.) We have thought such right could not be so acquired. To acquire such title by adverse possession the claimant must openly and notoriously hold against the sovereign, the people of the State. The question would be aptly asked, Who represents the sovereign in this respect? Whose duty on behalf of the sovereign is it to watch the public waters of the State to detect unlawful trespasses? The State is not estopped by the unauthorized acts of its agents and who by authority could acquiesce in the unlawful adverse possession? But yet acquiescence by some one who has the right to bring the action for the State would be one of the essential elements in a title by adverse possession.

(*Burbank* v. *Fay*, 65 N. Y. 57.) In that case (p. 66) it is said: " It is held, in several cases, that no one will acquire a title by prescription by pasturing his cattle on an open common, training-field or public highway. The reason given is, that these being kept open for public use, no one by using them can raise any presumption of a particular grant in his favor." Certainly such a title can never be acquired by one who is occupying by license or permission from the rightful owner (*Hinkley Case, supra,* 316); and the relation of the parties when the occupancy began is presumed to continue after the end of the term. (*Whiting* v. *Edmunds,* 94 N. Y. 309, 314.) However, if we are right in our view of the nature of the occupancy here, this question need not be decided.

The riparian owners on a navigable stream possess the same rights as do such owners on a private stream, and some others not material here. (*Hinkley* v. *State, supra,* 317.) They in no sense own the waters opposite their premises, but have the right to use the waters for power purposes without any grant from the State, if the water is returned to the stream upon the riparian owner's premises. (*United Paper Board Co.* v. *Iroquois P. & P. Co.,* 226 N. Y. 38.) If the riparian owner holds title to the bed of the stream from the State he may construct a dam in the stream and impound the water and turn it into a canal for power purposes, provided he thereby does not obstruct navigation; or the State may grant permission to construct a dam for like purposes; but all rights of riparian owners, unless in pursuance of a grant by the Legislature for a purpose beneficial to commerce, are held subject to the paramount right of the State to improve the stream.

We turn then to the rights of the parties.

The Frontier Corporation has no title to any part of the bed of the channel, since no part thereof claimed by it has ever been granted by the State, and conveyances bounded by the stream carry title to the edge of the stream only (*Fulton Light, H. & P. Co.* v. *State,* 200 N. Y. 400, 413); nor does it appear that that company is in physical possession of any part of the bed of the stream.

The Power Company has succeeded to such rights only as existed under the two acts of the Legislature. The grant of 1808 was not a grant of any part of the bed of the stream. It was a grant of a license or franchise in part for a public use in aid of commerce — the construction of a canal — and in part for private use; in terms it is limited to seventy-five years. There was no other consideration for the grant than the construction of the canal; all the earnings for both uses went to the grantee. It authorized the use of the already constructed dam during the limited period,

until 1883.   The public use ceased about 1850, since which time the dam and the waters therefrom have been maintained solely for private use.   The construction for a public use has long since crumbled in disuse and nothing thereof of value remains.   Since 1850 the privilege or franchise has been used solely as one of gift, for which no consideration was being paid and the use has been by permission.   As stated in the brief for the Power Company: " The sole value of this property lies in its hydro-electric power possibilities."   The act of 1826 granted some part of the bed of the stream below the dam only.   It did not purport to grant the bed on which the dam rests; it did not extend the life of the franchise. The reservation in respect to the tolls is claimed to show an intent to extend it.   The language used does not so state and, in a grant from the State, nothing against the interest of the State will be implied; only that which is expressed in unequivocal language is granted, unless the language used necessarily implies some additional grant or right.   (*People* v. *New York & S. I. Ferry Co.,* 68 N. Y. 71, 77; *Lewis Blue Point Oyster C. Co.* v. *Briggs, supra,* 292.) The language used may have other meanings than those contended for by the Power Company.   (*Lansing* v. *Smith,* 4 Wend. 9; *People* v. *New York & S. I. Ferry Co., supra.*)   That the Legislature did not intend to alienate the State's power to improve the stream appears from a clause in the grant, as follows: " And provided further, That nothing in this act contained shall be taken to prevent or in any manner to hinder the State from taking from the said branch of the river Saint Lawrence, below the said dam, any water for the use of any navigable canal or canals which may be constructed by the State, or by virtue or in pursuance of any act of the Legislature of this State."   This would also indicate that the act of 1826 was intended solely to grant the bed of the stream below the dam.

This defendant company is using and intends to use the waters impounded by this dam for business purposes only.   In connection with this use there is no construction in the bed of the stream other than the dam and the hydraulic construction connected immediately therewith; these are not now an obstruction to navigation.   Except the maintaining of these structures this defendant as a riparian owner could use the waters of the stream as it is now using them without any grant from the State.   The rights of the Power Company, whatever they may be finally determined to be, have matured and no greater right can be acquired if this use by permission is continued.   There is now no project on the part of the State to improve the St. Lawrence at this point.   There is, however, active interest in developing the St. Lawrence river

and its water power and there is little doubt that the State, perhaps also the Federal government, will soon take action in this respect. The State we believe will not be prejudiced if the defendant Power Company and those using the waters under it are permitted to continue such use until the State shall adopt a plan for developing the stream. The court is not, therefore, called upon to render judgment ejecting the Power Company, its tenants or lessees.

The judgment dismissing the complaint should be affirmed. We disapprove of findings 5, 6, 7, 8 (except that the Frontier Corporation owns the uplands) and the first sentence of 11. We find the New York and Ontario Power Company is in possession of a dam and hydraulic works adjacent thereto which its predecessor constructed from Ogden island to the south shore of the river and which it now maintains by permission of the State; it also owns the bed of the channel below the' dam as granted by chapter 280 of the Laws of 1826. The defendant Frontier Corporation does not own and is not in possession of any lands under the waters of the St. Lawrence river between Ogden island and the south shore.

COCHRANE, P. J., HINMAN, McCANN and DAVIS, JJ., concur.

Judgment dismissing complaint affirmed, with costs.

The court disapproves of findings 5, 6, 7, 8 (except that the Frontier Corporation owns the uplands) and the first sentence of 11. The court finds that the New York and Ontario Power Company is in possession of a dam and hydraulic works adjacent thereto which its predecessor constructed from Ogden island to the south shore of the river and which it now maintains by permission of the State; it also owns the bed of the channel below the dam as granted by chapter 280 of the Laws of 1826. The Frontier Corporation does not own and is not in possession of any lands under the waters of the St. Lawrence river between Ogden island and the south shore.