Marvin R. Dye, J.
Pursuant to the provisions of section 676-a of the Conservation Law of the State of New York, the Finger Lakes State Park Commission has appropriated and taken possession of the lands reputedly owned by these claimants, Edward A. Hawkins, Sr. and Clara Dorothy Hawkins, his wife, for the public purpose and use of Chimney Bluffs State Park. The appropriation papers were filed in the office of the Department of State on the 29th day of May, 1963 and also filed and recorded in the office of the Clerk of the County of Wayne on the 6th day of June, 1963, and thereafter .on or about June 13, 1963 were personally served on the claimants. The lands thus appropriated are shown on Map 8004, made by the Finger Lakes State Park Commission dated September 1962 entitled ‘ ‘ Map of Lands to be acquired from Clara D. and Edward A. Hawkins, Sr.”, said lot being designated as “ Proposal No. 4 ”.
The metes and bounds description of such lands comprises about 53.75 acres which are part of Lot 110 situate on the south side of Lake Ontario, Town of Huron, Wayne County, New York at so-called Chimney Bluffs and East Bay.
*849 The subject lands thus described embraced all of the uplands within the lot lines of Lot 110 which had been purchased by the claimants from Stanley R. Tripp and wife by deed dated August 18,1951 and recorded in the office of the Clerk of Wayne County August 21, 1951 in Liber 395 of Deeds at page 44.
The claim for compensation in the amount of $165,000 dated and verified July 23,1963, has been timely filed with the office of the Attorney-General on July 26, 1963 and with the Clerk of the Court of Claims on July 29, 1963 and has neither been assigned nor submitted to any other court or tribunal for decision.
In addition to compensation for the lands described in the appropriation papers, the claimants also make claim for an alleged de facto appropriation of the underwater marshlands embraced within the lines of Lot 110 and not included in the metes and bounds description used in the appropriation papers but which are adjacent to the lands taken and comprise the remainder of Lot 110. The State omitted such underwater marshlands under the theory that they were part of East Bay, sovereign title to which had never been released or alienated by the State and that the deed from Tripp and his predecessors in interest purporting to convey Lot 110 could not and did not convey the underwater or marshland area. The available maps and title documents received in evidence show Lot 110 as rectangular in shape containing about 85 acres, the east line of which extends southerly from Lake Ontario over some hard land and some marsh land to intersect the south boundary line which extends easterly from the hard land into the wet land. The wet land involved comprises about 30 acres covered with water at varying depths and largely overgrown with rushes and swamp grass.
At the trial the claimant Hawkins testified that he had purchased the premises comprising Lot 110 in 1951; at the time the property was improved with a dwelling house and some farm buildings in a poor state of repair. During the ensuing years extensive repairs and improvements were made to the house, the decrepit farm buildings were removed and replaced with a concrete block and frame single garage and tool house. In the marsh area east .of the highway about opposite the dwelling a small landfill was made to form a docking place for an outboard fishing boat, from which a channel had been scooped out through the rushes to the deep water of East Bay. A log road was cut in the wooded hillside area west of the dwelling to permit removal of the marketable timber which had been sold. The cost of all these items calculated in part by reference to cancelled check stubs and by estimates based on personal recollection was said to amount to $24,000 but scarcely added anything like that *850 to the subject property. Patently, such expenditures were primarily made for the comfort, convenience and aesthetic satisfaction of the owners. At the time of the taking, there were no domestic facilities available except a farm well and electricity.
The subject land is bounded on the west by the west line of Lot 110, on the north by the shore of Lake Ontario at Chimney Bluffs, on the east by the east line of Lot 110 for about 300 feet and thence in a meandering southwesterly direction along the edge of the marsh land to the south line of Lot 110. At the shore line or north boundary of Lot 110 Chimney Bluffs, so-called, range upwards about 100 feet, the face of which is almost sheer to the water’s edge and in other places has been severely eroded, forming a steep slope. The unusual geological formation called “ drumlins ” is attributed to glacial action in the long-ago ice age, which also accounted for the numerous bays and shallows along the south shore of Lake Ontario including East Bay, a phenomenon of nature noted on maps and documents left by early explorers, church missionaries and others.
This so-called “ drumlin ” formation extended southerly from the lake shore along the west line of Lot 110 in what may roughly be described as a high ridge overgrown with dense underbrush and many kinds of second growth trees having little or no commercial value.
The dwelling house and garage above mentioned are located in an open area between the west line of Chimney Bluffs, East Bay Road and the wooded ridge. This area fronts about 300 feet on the road, has a seeded lawn embellished with some ornamental shrubbery, a row of grapes in the rear and some small fruit trees and berry bushes as well as a gravel driveway to the garage.
Extending southerly from the home site is a narrow strip of uncultivated farm land lying between the road and west line of Lot 110 having a frontage of about 1,800 feet on the roadway and converging almost to a point where it meets the southwest corner of Lot 110. In this area there is a partially drained farm pond. On the east side of the road there is an elevated area of heavily wooded land about 250 feet in depth which slopes sharply to the edge of the marsh land for a distance of about 1,050 feet. There is an old dead-end lane along the edge of the marsh which is being slyly used by unauthorized persons to dump cast-off household equipment, trash and garbage, an all too frequent desecration of the American scene. Northerly from this wooded area, the east side of the road and the marsh land are practically contiguous for about 1,325 feet and then, due to a curve in the road, the hard land widens out to about 150 feet for a distance of about *851 850 feet to a point where the road turns to the east and becomes East Bay Road. North of the new East Bay Road and its adjacent marsh land there is some hard land elevated some six or eight feet above the water level of Lake Ontario which abuts on the former old East Bay Road, now owned by Wayne County, for a distance of about 487.20 feet.
The owner testified that he had purchased the property with the intention, upon retirement, of developing it into sites for vacation cottages, but had not progressed the idea beyond the making of an informal sketch on a piece of note paper sometime about in the year 1957. No formal survey map or plan outlining the proposed development was ever made or application made to" town authorities for such a development.
To show that such a development would represent the highest and best use of the land, proof was adduced by a real estate promoter who was selling some summer cottage lots on a nearby farm and also by a licensed real estate broker and appraiser. Based on such use, the subject property was roughly divided into 13 different categories or parcels such as the Bluff frontage of about 410 feet by 150 feet in depth, the northeast frontage on the side of Chimney Bluffs East Bay Road; by the placing and grading of fill on the east side of Chimney Bluffs East Bay Road and the laying out of lots about 150 feet deep on the west side of said road; that by cutting and grading access roads into and through the high ridge to the west, lots could be laid out for use as summer cottages and campsites, to which various separate valuations were attributed which in the aggregate gave a valuation of $141,000 deemed fair and reasonable at the time of taking. In arriving at this valuation, the witnesses assumed that Hawkins owned the adjacent and underwater marshland and that it was accessible and available for landfill and grading and boating. Contrary proof offered by the State demonstrated that the highest and best use for the subject lands at the time of taking was for park purposes, for which a valuation of $26,300 was fixed. This was on the assumption that Hawkins did not own the 30.26 acres of wet land. The State’s estimate of value included improvements valued at $12,700 as opposed to the owner’s valuation of $12,500. The wide difference in the two estimates as to land value is not an unusual experience for the finder of the fact, probably due in this instance to the divergent opinions as to highest and best use. Both the witnesses for the owner and the State tested their valuations by use of a number of so-called comparable recent sales, but here again the comparables selected also fell into the respective classification for highest and best use, *852 namely, either as a high density waterfront resort or for park purposes due to unsuitability for farm operations.
Based on a careful consideration of all the oral, documentary and photographic testimony and from a thorough view by walking over, through and around the whole of the subject property, its location on the shore of Lake Ontario, its environs and relationship thereto, the highway approach, its unusual topography, its generally unspoiled state of nature, the accessibility to the waters of the lake and East Bay, the court is satisfied that the highest and best use of the subject property is for park purposes and so finds it to be the fact.
On the issue of just compensation, the court is of necessity obliged to determine whether the 30.26- acres of wet lands within the lines of Lot 110 are in fact part of the underwater bed. of East Bay, and as such, presumptively owned by the State of New York as sovereign for the -benefit of the People of the State (People v. Foote, 242 App. Div. 162). The claimant raised the issue ,and must be deemed to have submitted it for determination by this court by predicating a substantial part of its claim on the allegation of ownership “ 12) * * * of certain marsh land adjacent to the property appropriated and to land under water rendered inaccessible and of no remaining value, due to and as a result of said appropriation; (3) that the appropriation in fee has rendered valueless any and all remaining property, swamp land, land under water and has rendered the same inaccessible and destroyed any riparian rights or other rights which the claimant may have had by said appropriation.” (Cf. Solkat Realty Corp. v. State of New York, 174 Misc. 808, affd. 262 App. Div. 944, affd. 288 N. Y. 547; Rules of Court of Claims, rule 28.)
The issue thus posed was fully litigated. The claimants failed to sustain their burden of proof. The fact that the deed from Tripp to Hawkins purported to convey title to Lot 110 “ containing 85 acres be the same more or less ’ ’, while strong evidence in a proper case, cannot serve to establish title against the State, absent a showing that the State has ever relinquished, alienated or transferred its sovereign right of ownership by express grant, and here there is no such proof (Blakslee Mfg. Co. v. Blakslee’s Sons Iron Works, 129 N. Y. 155); nor may claimants found a title by adverse possession under claim of title based on the Tripp deed for to do so would deprive the State of its inalienable sovereign power, the existence of which may not be doubted (People v. New York & Staten Is. Ferry Co., 68 N. Y. 71) and it is equally immaterial whether the waters of East Bay are navigable in fact at the point of the taking, since the waters being navigable in part, must be deemed navigable in whole *853 (Illinois Cent. R.R. v. Illinois, 146 U. S. 387; Matter of Long Sault Development Co., 212 N. Y. 1; Matter of Niagara Falls Power Co. v. Water Power Control Comm., 267 N. Y. 265). The State’s sovereign title to the bed of Lake Ontario, its bays and inlets was finally and fully established under the treaty of Hartford (Massachusetts v. New York, 271 U. S. 65); that East Bay forms a part of Lake Ontario, which fact has been taken cognizance of by the New York State Legislature (Black River Bay, L. 1886, ch. 141; Great Sodus Bay, L. 1879, ch. 534) and by the State courts (Lawton v. Steele, 119 N. Y. 226; People v. Feathering, 59 Hun 615, opn. in 12 N. Y. S. 389 [Sup. Ct., Gen. Term, 5th Dept., 1891]). The cases dealing with ownership of the bays and inlets of Long Island Sound are governed by the provisions of ancient colonial charters and patents which ran to the towns of Long Island and not to the State (Bliss v. Benedict, 202 App. Div. 115, affd. 234 N. Y. 596; Tiffany v. Town of Oyster Bay, 209 N. Y. 1; Grace v. Town of Hempstead, 166 App. Div. 844, affd. 220 N. Y. 628). The case of Fulton Light, Heat & Power Co. v. State of New York (200 N. Y. 400), heavily relied upon by the claimant, dealt with title to the underwater bed of an inland stream and on its facts is not apt, for there the situation is governed by a different rule of law not here applicable. The case of Odenbach v. State of New York (Court of Claims No. 32309, Feb. 28, 1958) is in no way controlling. There the court did not find as a fact that the waters of Round Pond form a part of Lake Ontario; the award, as made, was duly paid when the Attorney-General filed his certificate of no appeal and pro forma approval of title to the property as described in the appropriation notice (Rules of Court of Claims, rule 28). That isolated decision must be limited to the record there made and, as such, may not be regarded as controlling here. As has been said, the State’s sovereign title is inalienable except by grant. The doctrine of waiver or estoppel is not available by the superficial inconsistency of the certification in Odenbach, since the error of law, if it be one, and we do not say that it was under the circumstances of that record, by an employee or an officer of the State, is not binding on the State (cf. City of New York v. Wilson & Co., 278 N. Y. 86, 99; New York City Employees’ Retirement System v. Eliot, 267 N. Y. 193; New York Tel. Co. v. Board of Educ., 270 N. Y. 111).
On this record then, I find as a fact that the waters of East Bay form a part of the navigable waters of Lake Ontario; that the land under the waters of East Bay comprising 30.26 acres of Lot 110 is owned by the State of New York as sovereign, in trust for all the People and that its title thereto has never been *854 divested by prescription or otherwise; that the hard lands comprising 53.74 acres of Lot 110, as shown and described on the appropriation map and in the supporting papers, which description the court herewith adopts and makes a part hereof and as such, represent the claimants ’ entire holdings; that the clear language of the letter addressed to claimants signed by the Finger Lakes State Park Commission, bearing date October 30, 1961, indicating an intention to appropriate ‘ ‘ your entire holdings to East Bay Road ” must be and hereby is being read as meaning that the holdings mentioned are the properties appropriated herein and are as described in the appropriation map and papers as later prepared, filed and personally served, and no more; that following the appropriation, the claimants herein are possessed of no property rights or interests of any kind whatsoever to the bed under the waters of East Bay which survived the appropriation other than for right of access to the waters thereof, which right may properly be considered as an element of damages (City of New York [West 205th St.], 240 N. Y. 68, 73; Matter of City of New York v. Wilson & Co., sufra). In so ruling, the court makes no determination of the title of the claimants in and to the lands actually appropriated (Court of Claims Act, § 20, and Rules of Court of Claims, rule 28).
After giving due and careful consideration to all of the factors and elements properly attributed to the fixation of sound value, including its assessment for tax purposes in the sum of $3,500, its topography, its rough, hilly condition and character, largely overgrown with trees, bushes and shrubs of no commercial value, its unsuitability for farm operations — it has not been used as such — and taking into consideration its location on the shores of Lake Ontario and the marshlands of East Bay; the unusual view and aesthetic advantages offered by the bluff (Anawia v. State of New York, Claim No. 37299, mod. 22 A D 2d 756) and the owners’ riparian right of access to the waters of the lake and bay, its eminently natural suitability for park purposes and from a thorough view of the premises and the surrounding countryside and upon the record as a whole, I am satisfied and now find as a fact that the just compensation due the owners, based upon the sound market value of the subject property consisting of about 53.74 acres, taken as a whole (cf. Zogby v. State of New York, Claim No. 39904, 26 A D 2d 899 [4th Dept.]) amounts to $40,305, calculated at the rate of $750 per acre, with interest at the appropriate rate, computed for the allowable periods for the whole or the unpaid balance of this award, as the case may be, from June 6, 1963 to the date of entry of judgment.
*855 In the event that a court of final appellate jurisdiction rules that this court has erred in assuming that the underwater bed of the marshlands is owned by the State of New York as sovereign, and for that reason only, and in order to avoid the necessity of reopening the trial for further proof on the issue of damage, I find as a further fact and conclusion of law that as a consequence of such taking the claimants have suffered consequential damage to the 30.26 acres of marshland in the sum of $35 per acre or $1,059.10 which amount, together with interest, may be added to the award as hereinabove provided.
This memorandum is intended to constitute the decision of the court (CPLR 4213, subd. [b]).