STATE OF NEW YORK, Appellant, v. HERMON L. BISHOP, JR., Respondent.— In an action for injunctive relief, upon claims that defendant upland owner has filled land lying below the mean high water mark, has created and maintains a public nuisance and has polluted State waters, plaintiff appeals from a judgment of the Supreme Court, Suffolk County, entered June 20, 1973, after a nonjury trial, which, among other things, dismissed the complaint and adjudged that (1) defendant's title is measured by the metes and bounds description set forth in a judgment entered in favor of a predecessor in title of defendant in a registration proceeding pursuant to article 12 of the Real Property Law, (2) among defendant's rights is that of reclamation and (3) the plane of mean high water mark is at the edge of the bog as it presently exists on the northerly line of defendant's parcel. Judgment reversed, on the law and the facts, with costs, and case remanded to the trial court for further proceedings, including the fixing on defendant's parcel of the mean high water mark as it existed prior to defendant's emplacement of fill. Defendant is the owner of real property in the Town of Southampton. In a judgment entered in September, 1950, in favor of a precedecssor in title of defendant in a registration proceeding pursuant to article 12 of the Real Property Law, defendant's parcel's eastern, western and southern boundaries were described by courses and distances, while its northern boundary was similarly described from a westerly "point on the mean high water mark of Moriches Bay" and southeasterly "along the mean high water mark" to five different points, in the case of each of which the judgment referred to the mean high water mark. In 1969 title to the parcel at bar was conveyed to defendant. Between 1950 and April, 1972, erosion caused several hundred feet of the northerly end of defendant's parcel, as it was described in the 1950 judgment, to be covered daily by the tide. Between April and November, 1972, defendant caused fill to be placed in the covered area, beyond the mean high water mark and over communities of *spartens patens* (salt hay) and *Spartens alterniflora* (cordgrass). By determining the locations of both types of tidal plants, the plane of the mean high water mark, as it existed prior to defendant's emplacement of the fill, may be fixed (*Dolphin Lane Assoc.* v. *Town of Southampton,* 72 Misc 2d 868, affd. 43 A D 2d 727, app. dsmd. 34 N Y 2d 667). Whether the erosion of defendant's parcel was caused by the slow, unassisted workings of natural elements, or by human action affecting the tides, such as dredging or the digging of mosquito ditches, is irrelevant (*County of St. Clair* v. *Lovingston,* 23 Wall. [90 U. S.] 46; *Halsey* v. *McCormick,* 18 N. Y. 147). Hence, it is of no consequence that plaintiff's sole witness could not speak as an expert concerning the effects of human manipulation of the topography upon the tides rimming defendant's parcel. Nor did the 1950 title registration judgment bind plaintiff to the location of the mean high water mark described therein, for, notwithstanding that judgment, defendant, as did his predecessor, holds a title diminishable in extent by erosion and the consequent influx of the tide (Real Property Law, § 391; *Matter of City of Buffalo,* 206 N. Y. 319; *Lawkins* v. *City of New York,* 272 App. Div. 920). As for the marshland character of the disputed area at bar, waters though not navigable in fact are deemed navigable in law when they are shallow reaches of navigable bodies. Over such waters the power of the State extends (*Danes* v. *State of New York,* 219 N. Y. 67; *People* v. *New York & Ontario Power Co.,* 219 App. Div. 114; *Hawkins* v. *State of New York,* 54 Misc 2d 847). Last, the erosion of defendant's parcel carried "with it all incidents

of ownership", including the right of reclamation (*Matter of City of Buffalo, supra,* p. 326). Gulotta, P. J., Hopkins, Shapiro and Munder, JJ., concur; Cohalan, J., not voting. [75 Misc 2d 787.]