OPINION OF THE COURT
Richard C. Wesley, J.
Petitioner is the owner of property on the east shore of Canandaigua Lake known as the "Thendara” property. By a CPLR article 78 petition sworn to August 8, 1990, she seeks to challenge an April 27, 1990 letter decision by the Office of General Services (OGS), of which respondent is Commissioner. Respondent has filed a motion containing several objections, seeking to have the petition dismissed. For the reasons set forth below, respondent’s application is denied in most respects, and respondent is directed to file the record in this matter and his answer.
FACTS
The Thendara property consists of approximately 30 acres of commercially and residentially zoned land, containing a restaurant and inn, which are owned and operated by petitioner’s son and daughter-in-law, Richard and Joy Schwartz. When the property was acquired in 1988, the property contained floating docks, which the Schwartzes decided to replace and expand.
On August 11, 1989, Richard Schwartz contacted Richard K. Matters of OGS, and was allegedly told that Mr. Matters would forward an OGS application for an easement for the docks so that piles could be driven into the lands underlying Canandaigua Lake. Mr. Matters allegedly told Mr. Schwartz to keep the application on file until the construction of the docks was completed. The construction of the docks was begun thereafter.
According to respondent, the construction of the docks was contemporaneous with the construction of over 50 one-family houses on the upland portion of the Thendara property. However, Mr. Schwartz states that the decision to construct *1026 and expand Thendara’s docks was independent of the decision to develop the upland property, and that the docks were intended as an appurtenance to the restaurant.
By letter dated September 7, 1989, OGS Attorney Thomas A. Pohl wrote to the former owners of the Thendara property, notifying them that OGS considered the construction of the docks to be unauthorized under the Public Lands Law and a violation of the State Environmental Quality Review Act (SEQRA). The recipient of the letter gave it to Mr. Schwartz. On September 22, 1989, the State served the Schwartzes with a temporary restraining order (TRO) halting the construction of the docks, and a complaint sounding in trespass and nuisance. On September 29, 1989, petitioner filed a notice of intention to apply for an OGS easement over the lands under Canandaigua Lake.
On October 10, 1989, this court held a hearing on the State’s application for a preliminary injunction in the trespass action. On October 13, 1989, this court issued an oral decision lifting the TRO and permitting the completion of the docks, to preserve the Schwartzes’ investment in the docks to that date. However, the decision forbade the use of the docks except for emergencies, and required the posting of a $250,000 bond to cover the cost of possible removal or modification of the docks, if petitioner’s easement application was not granted. On October 15, 1989, petitioner filed a "Form of Petition Pursuant to the Provisions of Section 3, Subdivision 2 of the Public Lands Law”, seeking an easement for a 70-slip open-member dock system running along the 800-foot shoreline of the Thendara property.
On January 10, 1990, OGS conducted a public hearing on petitioner’s application at the Community College of the Finger Lakes in Canandaigua. Respondent’s memorandum of law describes the hearing as a public informational hearing under 9 NYCRR 270.10. Respondent’s representatives advised the attendees that the record would be held open for 30 days thereafter, for additional submittals. Six days after the expiration of this 30-day period, the attorneys for the East Shore Association of Canandaigua, Inc. were permitted to submit materials in opposition to petitioner’s application. Although respondent argues that petitioner’s former attorney made no objection to the late submissions, petitioner’s former attorney submits an affidavit indicating he had no say in the matter.
On April 3, 1990, a meeting was held in Albany, attended *1027 by petitioner’s former attorney, the attorney for the East Shore Association, and OGS attorneys and staff. In an apparent attempt to mediate the disagreement between petitioner and the East Shore Association, an OGS attorney suggested construction of a configuration with a "finger pier”, which would allow space for 44 boats. The attempt to mediate was unsuccessful.
On April 23, 1990, respondent issued a negative declaration for the project under SEQRA, determining among other things that the requested 70 slips might reduce the enjoyment of Canandaigua Lake by petitioner’s neighbors. By letter dated April 27, 1990, OGS allowed petitioner to construct only 44 of the requested 70 slips and imposed conditions, including restricting the use of the easement to transient customers of the restaurant only. On May 18, 1990, petitioner accepted the terms of the easement, without prejudice to her rights and legal remedies.
Petitioner then commenced this article 78 proceeding, arguing that respondent’s decision was arbitrary and capricious in several respects. She claims that no other commercial enterprise on Canandaigua Lake has either been subject to a temporary restraining order or required to go through the hearing process that she went through. She claims that respondent violated due process by accepting late materials from the project’s opponents and by "attempting to condition the granting of an easement on the forfeiture of [petitioner’s] right to seek judicial review”. She also claims that there is no support in the record for the decision to allow only 44 docks and to impose other conditions on the easement.
In the accompanying motion to dismiss, respondent argued that the petition is insufficient on its face, in seven respects:
ct(a) * * *
"(b) No claimed due process violations can be sustained, as a matter of law, for administrative proceedings;
"(c) Since the decision rendered by the respondent was completely discretionary and the nature of the proceedings below were wholly administrative, petitioner cannot succeed on a claim for mandamus relief to compel issuance of an easement because petitioner cannot establish a clear right to the relief requested; [and] * * *
"(f) Petitioner has, as a matter of law, failed to state facts sufficient to state a claim for selective or discriminatory enforcement”.
*1028 DISCUSSION
Respondent’s objections will be addressed in the order in which they were raised.
I
Respondent next argues that no claimed due process violations can be sustained, as a matter of law, for administrative proceedings in which he has absolute discretion. He does not appear to be arguing that the Due Process Clause does not apply to his administrative agency; instead, his argument appears to be that (because of his broad administrative discretion) petitioner has no recognized property interest to which due process protections would attach. (See, Board of Regents v Roth, 408 US 564 [1972].)
Respondent is correct to the extent that petitioner has no "property interest” in the outright grant of an OGS easement which would be protected by the Due Process Clause. The test for such a property interest focuses primarily on the degree of discretion enjoyed by the issuing authority, not the estimated probability that the authority will act favorably in a particular case. Even if, in a particular case, objective observers would estimate that the probability of issuance was extremely high, the opportunity of the agency to deny issuance suffices to defeat the existence of a constitutionally protected property interest. (RRI Realty Corp. v Incorporated Vil. of Southampton, 870 F2d 911, 918 [2d Cir 1989], cert denied — US —, 110 S Ct 240, 107 L Ed 2d 191 [1989]; Tarry Corp. v Friedlander, 826 F2d 210, 213 [2d Cir 1987].) Given respondent’s broad discretion here, petitioner has no protected "property interest” in the actual grant of an easement.
However, as respondent admits, petitioner does have certain riparian rights, including the right of access to navigable waters. As a riparian owner, petitioner has the right of access to the navigable portion of the lake "for navigation, fishing and such other uses as commonly belong to riparian ownership, the right to make a landing wharf or pier for [her] own use or for that of the public, with the right of passage to and from the same with reasonable safety and convenience.” (Saunders v New York Cent. & Hudson Riv. R. R. Co., 144 NY 75, 87-88 [1894]; see also, Town of Brookhaven v Smith, 188 NY 74, 82 [1907]; Rumsey v New York & New England R. R. Co., 133 NY 79, 88 [1892], dismissed 163 US 698 [1896]; Huguenot Yacht Club v Lion, 43 Misc 2d 141, 147 [Sup Ct, *1029 Westchester County 1964].) Public Lands Law § 75 (9) provides that rights such as these cannot be taken away, impaired, or impeded without due process.
Respondent argues that a restaurant is not a protected riparian use, citing Matter of City of New York (Neptune & Emmons Aves.) (280 NY 604 [1939]), and Town of Hempstead v Oceanside Yacht Harbor (38 AD2d 263, 265 [2d Dept 1972], affd 32 NY2d 859 [1973]). However, it is clear that those cases only refer to restaurants (and similar structures unrelated to commerce and navigation) which are themselves constructed on submerged (or formerly submerged) lands, not structures such as the Thendara Inn which are constructed on upland property. (City of New York v Third Ave. Ry. Co., 294 NY 238, 243 [1945]; see also, Hinkley v State of New York, 234 NY 309, 318 [1922].)
Equally untenable, however, is petitioner’s suggestion that respondent cannot limit her riparian rights at all by requiring an easement. "The rights of riparian owners must yield to the State’s [legitimate] exercise of police power.” (Matter of Haher’s Sodus Point Bait Shop v Wigle, 139 AD2d 950, 951 [4th Dept 1988], lv denied 73 NY2d 701 [1988].) Specifically, the right of access for navigation, and "the right to make a landing, wharf, or pier for [one’s] own use, or for the use of the public, [are] subject to such general rules and regulations as the [Legislature may see proper to impose for the protection of the rights of the public, whatever these may be.” (Thousand Is. Steamboat Co. v Visger, 179 NY 206, 210 [1904].)[1] The State not only has rights as the owner of the underlying land (see, Pyle v Estate of Miller, 163 AD2d 800 [4th Dept, July 13, 1990]), the public also has certain rights, inasmuch as the State holds that land in the public trust. (See, Phillips Petroleum Co. v Mississippi, 484 US 469 [1988]; Illinois Cent. R. R. v Illinois, 146 US 387 [1892]; Smith v State of New York, 153 AD2d 737 [2d Dept 1989].)
The question then becomes, what substantive and procedural due process protections attach to petitioner’s property rights? As to substantive due process, the existence of a protected property right of petitioner’s does not change the substantive standard of review in this matter. State decisions *1030 concerning land use will survive substantive due process challenges unless they are arbitrary or unreasonable. (Greene v Town of Blooming Grove, 879 F2d 1061, 1063-1064 [2d Cir 1989], and cases cited therein.) As set forth below, I do not decide today whether respondent’s action was arbitrary and capricious; I leave that determination until after respondent has answered and submitted the entire record.
Likewise, because respondent’s motion argued that petitioner had no rights, and did not specifically address petitioner’s claim of procedural due process violations, I do not address that issue in this decision.[2] I do hold, however, that petitioner does have property rights, which cannot be taken away, impaired, or impeded without due process. (Public Lands Law § 75 [9].)
II
Respondent next argues that, because the decision he rendered was completely discretionary and the proceedings below were "wholly administrative”, there is no clear right to the relief requested, and petitioner’s claim for mandamus relief must fail, citing cases such as Matter of Association of Surrogates & Supreme Ct. Reporters v Bartlett (40 NY2d 571, 574 [1976]). (See also, Matter of Mullen v Axelrod, 74 NY2d 580, 583 [1989].)
The language of Public Lands Law § 3 (2) and the associated regulations make it clear that the grant of an easement is discretionary. (See, Matter of Castaways Motel v Schuyler, 25 NY2d 692, 694 [1969].) However, respondent’s discretionary decision remains reviewable under CPLR 7803 (3), and still may be set aside if it is "arbitrary and capricious”. In this sense, a "mandamus to review” proceeding under subdivision (3) is different from a "mandamus to compel” proceeding under CPLR 7803 (1), such as the Bartlett case (supra). (See, Siegel, NY Prac § 561, at 785 [1978]; see also, Usen v Sipprell, 41 AD2d 251, 258 [4th Dept 1973].)
*1031 III
Respondent next argues that petitioner has, as a matter of law, failed to state facts sufficient to state a claim for selective or discriminatory enforcement. Although respondent recognizes that selective enforcement can be an equal protection violation (Yick Wo v Hopkins, 118 US 356 [1886]; Matter of 303 W. 42nd St. Corp. v Klein, 46 NY2d 686 [1979]), respondent argues that petitioner must show intentional or conscious discrimination, based on an arbitrary or prohibitory classification, before she can prevail on this theory.
Although the presence of these latter factors might entitle petitioner to "enhanced scrutiny”, their absence is not necessarily fatal to an equal protection claim. Even in the absence of these factors, an agency decision can be overturned on equal protection grounds if the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude the agency’s actions were irrational. (See, Pennell v City of San Jose, 485 US 1, 14 [1988]; see also, Cleburne v Cleburne Living Center, 473 US 432, 439-442 [1985].)
Mr. O’Brien’s affidavit makes it clear that petitioner is only arguing that respondent’s decision concerning her property was arbitrary and capricious, when compared to respondent’s treatment of other commercial properties along Canandaigua Lake. Although petitioner’s burden "is a weighty one” (Matter of 303 W. 42nd St. Corp. v Klein, supra, at 694), it may be that she can meet that burden on the full record in this proceeding. Accordingly, respondent’s motion to dismiss the "selective enforcement” allegations of the petition is denied.
CONCLUSION
For the reasons set forth above, that part of the petition in this proceeding which seeks review under the "substantial evidence” standard of CPLR 7803 (4), and that part in which petitioner seeks to reargue the issue of estoppel, are dismissed. In all other respects, respondent’s motion to dismiss is denied, and respondent’s motion for a protective order is denied. Respondent is directed to serve and file his answer, his response to petitioner’s notice to admit, and the record of the administrative proceedings, by November 23, 1990. Each party shall bear its own costs.
[Portions of opinion omitted for purposes of publication.]

. But see, Moyer v State of New York, 56 Misc 2d 549, 551 (Ct Cl 1968) (at least for purposes of compensation in an eminent domain case, riparian owners have the right to build a boathouse and piers on land under water without a grant from the State, providing that they are for the use of navigation and commerce connected with a business or for individual use).

. I direct the parties’ attention to recent case law reiterating that " 'due process is a flexible constitutional concept calling for such procedural protections as a particular situation may demand’ ” (Matter of Medicon Diagnostic Labs. v Perales, 74 NY2d 539, 546 [1989], quoting LaRossa, Axenfeld & Mitchell v Abrams, 62 NY2d 583, 588 [1984]; see also, Washington v Harper, 494 US 210, 110 S Ct 1028, 108 L Ed 2d 178, 203 [1990]; Matter of Armere Holding Corp. v Bell, 37 NY2d 925 [1975]; Prue v Hunt, 157 AD2d 160, 163-164 [4th Dept 1990]; Samper v University of Rochester Strong Mem. Hosp., 139 Misc 2d 580, 585-587 [Sup Ct, Monroe County 1987], mod 144 AD2d 940 [4th Dept 1988], appeal dismissed 74 NY2d 642 [1989]).