OPINION OF THE COURT
Dennis F. Bender, J.
In the action herein, the plaintiffs are suing the defendants for trespass and for denying the plaintiffs their littoral rights. The parties own adjoining parcels of land fronting on Keuka Lake. The defendants have constructed a large two-story boathouse (approximately 32 feet by 36 feet), that is built in the water. The plaintiffs claim the boathouse is on their property by deed, or that its existence violates their littoral rights of lake access, and, in particular, the ability to launch their boats. The defendants allege defendant South Slope owns the property by deed, and that the plaintiffs acquiesced or consented to the boathouse’s location. Alternatively, defendant South Slope alleges it owns the area where the boathouse is located by adverse possession or that it has acquired rights by prescriptive easement. The defendants further assert laches and inequitable delay. The defendants counterclaim for slander and allege that the plaintiffs’ lawsuit is not brought in good faith.
*35 Defendant South Slope is a holding corporation solely owned by defendant Nicolo. Defendant Nicolo acquired his property in 1969, and transferred it to defendant South Slope in 1992. The plaintiffs acquired their property in 1975.
The current applications before the court are a motion for summary judgment by defendant South Slope seeking dismissal of the plaintiffs’ complaint, and a cross motion by the plaintiffs to amend their complaint to also include theories of ownership or proprietary rights of the area where the boathouse is located, by adverse possession and/or prescriptive easement.
The defendants argue that the plaintiffs’ complaint "is premised upon plaintiffs’ claimed ownership of that portion of the bed of Keuka Lake where defendants have constructed a new boathouse.” (Affidavit of John Nicolo, dated Dec. 4, 1996, if 29.) The defendants argue that the plaintiffs’ property line only extends to the high water mark and its boathouse is located below that mark. Therefore, the defendants argue the plaintiffs do not have any ownership rights by deed, and they don’t have any littoral rights in the area between the high water mark and the low water mark. The defendants also argue in Nicolo’s reply affidavit that even if the plaintiffs own to the low water mark, the boathouse is built beyond that point, and therefore the plaintiffs have no rights of ownership by deed or adverse possession. The defendants alternatively argue that the boathouse is located in the navigable waters of New York State. (This is in contrast to the defendants’ answers, in which they allege defendant South Slope owns the area.) Such being the case, they say the plaintiffs have no private right of action to enjoin or remove the boathouse; redress can only be sought by the State.
The plaintiffs argue they should be allowed to amend their complaint to include alleged ownership or use rights by adverse possession or prescriptive easement. In support of their request, they note that although the action has been pending for over 31/2 years, the defendants have not been prejudiced and the ultimate goal in this proceeding has always been a determination of the parties’ respective rights and interests to that portion of Keuka Lake on which, or in which, defendants have erected the offending boathouse structure. Defendants strenuously object, citing prejudice and noting they have completed depositions of the plaintiffs on the theories as originally pleaded.
*36 SUMMARY JUDGMENT
The purpose of a motion for summary judgment is to sift out evidentiary facts and determine from them whether an issue of fact exists. (CPLR 3212 [b].) Facts averred by the nonmoving parties must be accepted as true and a decision on the motion must be made on the version of the facts most favorable to them. (Strychalski v Mekus, 54 AD2d 1068 [4th Dept 1976].)
(1) Ownership by Deed. In their complaint, the plaintiffs allege their deed grants ownership rights to the center of Keuka Lake, and thus to the area where the boathouse has been erected. While in the common law this argument may have had merit, the impracticality of it has been recognized by the Court of Appeals when considering New York’s large-bodied lakes. "It cannot, it is argued, be supposed that the grantee of one hundred square feet upon the shore has attached to his property a strip of land under water two miles in length.” (Stewart v Turney, 237 NY 117, 122-123 [1923].) The modern rule, rather, is that if the lake is navigable then it is presumptively under the ownership of New York State, on behalf of the public, at the low water mark. (3 Warren’s Weed, New York Real Property, Lands Under Water, § 1.02; Navigation Law § 2; 107 NY Jur 2d, Water, § 14; Allen v Potter, 64 Misc 2d 938, 939 [Yates County 1970], affd 37 AD2d 691.)
A review of plaintiffs’ survey shows the boathouse has been erected below the low water mark. Thus, if Keuka Lake is a navigable body of water, the boathouse has been built on lands under the presumptive ownership of New York State. Is Keuka Lake navigable? Plaintiff Joseph Rogers acknowledges the lake is actively used for pleasure boating. Recreational use can constitute navigation (Adirondack League Club v Sierra Club, 201 AD2d 225 [3d Dept 1994]), although it is not necessarily determinative. (Hanigan v State of New York, 213 AD2d 80 [3d Dept 1995].) The court can also consider the State’s assertion of ownership at the low water mark, which has apparently occurred in conjunction with this matter. (Stewart v Turney, supra, at 124.)
Judicial notice is taken that Keuka Lake is a large "Y-shaped” lake, extending approximately 20 miles from Penn Yan, New York, to Hammondsport, New York, and over a mile in width at its widest part. There are restaurants and a public park along the waters. The existence of termini at and from which the public may enter and leave a waterway may be considered on the issue of the waterway’s navigability. (Hanigan v State of New York, supra, at 85.) Clearly, Keuka Lake *37 has "practical usefulness to the public as a highway for transportation.” (Navigation Law § 2 [5]; Adirondack League Club v Sierra Club, supra.)
This court finds there is no question of fact that Keuka Lake is a navigable body of water, and that the presumptive ownership of the lake is in the State of New York at the low water mark. Such, it is noted, is also consistent with court rulings regarding other bodies in the Finger Lakes. (See, for example, Allen v Potter, supra [Canandaigua Lake]; Stewart v Turney, supra; New York State Water Resources Commn. v Liberman, 37 AD2d 484 [3d Dept 1971] [both cases dealing with Cayuga Lake].) The plaintiffs have failed to overcome the presumption of State ownership. Thus, as a matter of law, the plaintiffs do not own the lands upon which defendants’ boathouse sits, and their cause of action alleging ownership by deed is hereby dismissed.
(2) Littoral Rights. In their complaint; the plaintiffs allege the defendants are violating their littoral rights of lake access, including the right to launch their boats in the area where the boathouse sits. The plaintiffs’ survey shows that if one extended the plaintiffs’ lot lines into the water using the "long lake method”, the boathouse is, arguably in part, within the plaintiffs’ littoral proprietorship.[1]
"Littoral rights properly refer to those rights attendant to the ownership of lands which abut lakes”. (3 Warren’s Weed, New York Real Property, Land Under Water, § 6.03 [2].) Although our courts often use the term "littoral” interchangeably with "riparian”, the term "riparian” historically refers to a river, not a lake. (Ibid.; 107 NY Jur 2d, Water, § 13.) What is the literal meaning of littoral? Littoral rights arise by operation of law because of the proximity of the upland to the water. An upland owner’s littoral rights are not, as argued by defendants, limited to the upland owner’s deed line. "It is important to distinguish between the use and occupation of land under water based upon a claim of ownership from the situation where the use and occupation is based upon the exercise of a littoral right. The littoral or riparian owner’s use of the surface area over the land under water, or the land under water itself, has been characterized as an easement or *38 servitude.”[2] (3 Warren’s Weed, New York Real Property, Land Under Water, § 6.02 [4].)
The underlying purpose of littoral rights is to assure the upland owner’s rights of practical access to the lake. (Ibid,.; Trustees of Town of Brookhaven v Smith, 188 NY 74 [1907].) Thus, an upland owner might be able to erect a structure in waters owned by another if it is in furtherance of the owner’s ability to access the water. "These improvements may include piers, docks, wharfs, filled land areas, channeling, or other devices to permit the safe harbor of a vessel with access to the navigable waters.” (3 Warren’s Weed, New York Real Property, Land Under Water, § 6.06 [2]; Town of Hempstead v Oceanside Small Craft Marina, 32 NY2d 859 [1973].) It is the "reasonable, safe and convenient access to the water for navigation, fishing and other uses * * * The scope of what is reasonable, safe and convenient use of the upland owner’s riparian rights has been gradually defined on a case by case foundation.” (Matter of Haher’s Sodus Point Bait Shop v Wigle, 139 AD2d 950, 951 [4th Dept 1988].)
The littoral owner has "certain rights in the foreshore in front of his premises, entirely apart from his rights and privileges as one of the public resorting to the beach * * * One of the most important rights of the riparian owner is that of access to and from the [water]. It is a right possessed by him incident to his ownership of the upland without reference to whether he has any grant of land under water from the State.” (Johnson v May, 189 App Div 196, 203.) " 'To the extent that the reasonable exercise of this right necessarily interfered with the right of the public to pass along the foreshore, the former was paramount and the latter was subordinate.’ ” (Supra, at 204.) Accordingly, the plaintiffs have littoral rights irrespective of whether their property line lies along the high or low water mark.
The next question is how far into the water can an upland owner assert his littoral rights? "The right of the * * * littoral proprietor * * * does not stop at either the high or low water mark, but extends to the navigable portion of the * * * water body.” (3 Warren’s Weed, New York Real Property, Land Under Water, § 6.05 [3].) When the littoral owner’s right of access to the navigable waters has been achieved, his littoral *39 rights end. "The right to construct piers and wharves in navigable waters must be confined to shoal waters and terminate at the point of navigability.” (White, Gratwick & Mitchell v Empire Eng’g Co., 125 Misc 47, 59 [1923], affd 240 NY 648.)
Although it is clear Keuka Lake’s ownership is in the State of New York at the low water mark, is there any question of fact whether it is navigable at that point, since the plaintiffs’ littoral rights extend to the point of navigability?
A distinction must be made between a declaration that the waters are navigable and therefore under the State’s sovereignty, for title purposes, as opposed to navigability for achieving a littoral owner’s right of access to the lake. For example, the State is presumed the owner of areas of a lake that are not navigable in fact, but are deemed navigable in law, when they are shallow reaches of navigable bodies. (State of New York v Bishop, 46 AD2d 654 [2d Dept 1974]; Hawkins v State of New York, 54 Misc 2d 847 [Ct Cl 1967].) A littoral owner’s rights extend to allow him reasonable access to the navigable waters of the lake, however, regardless of the ownership of the lake bed thereunder. (White, Gratwick & Mitchell v Empire Eng’g Co., supra; People v Mould, 37 App Div 35 [3d Dept 1899].)
The defendants argue there is no question of fact that the waters are navigable at the point where they have constructed their boathouse. The plaintiff Joseph Rogers’ testimony at an examination before trial in this matter indicates fishermen, sightseers, and water skiers have accessed that general area.
Logic dictates that what is navigable, and thus the extent of one’s littoral zone, must be based upon reasonableness however, and will tend to vary, depending upon the nature of the body of water. The needs of an ocean liner greatly exceed those of the largest vessel to grace Keuka Lake. Thus the zone of littoral rights for docking purposes on ocean frontage would surely exceed the same on any of the Finger Lakes.
By the same token, the littoral zone for launching purposes should not be confined to the point at which the smallest vessel navigable can negotiate the waters. Few would wish to restrict themselves to using canoes. Certainly not the defendants herein, who presumably, in part, built their boathouse to insure accessibility to navigable waters.
The court finds there is a question of fact whether the waters are navigable in fact where the boathouse is located. Therefore, the defendants’ motion to dismiss that portion of the plaintiffs’ complaint alleging the defendants have violated their littoral rights is denied.
*40 AMENDMENT
Leave to amend should be freely given, especially when new facts are not alleged, but merely new theories of liability. The plaintiffs, however, should show some merit to their argument. (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3025:ll, C3025:8.)
(3) Adverse Possession. The plaintiffs would not be able to establish any right to the area where the boathouse is located under a claim of adverse possession. They cannot claim their use of this area was exclusive, a necessary element of such claim. (McLean v Ryan, 157 AD2d 928, 930 [3d Dept 1990].) As noted earlier, plaintiff Joseph Rogers admitted other boaters and water skiers used the area. He also acknowledged defendant Nicolo utilized the same area. Further, "[w]hen property of the state * * * is inalienable, title cannot be obtained by adverse possession.” (107 NY Jur 2d, Water, § 88; Hinkley v State of New York, 234 NY 309, 315-319 [1922].) Thus, such claim of adverse possession could not, as a matter of law, be sustained in any event. The plaintiffs’ request to amend their complaint to assert this cause of action is hereby denied.
(4) Easement by Prescription. Prior to the construction of the boathouse, both the plaintiffs and defendants had the right to boat or swim in that area, as members of the public. (3 Warren’s Weed, New York Real Property, Land Under Water, § 6.08 [1].) The defendants’ construction of the boathouse may be an interference with the public right of navigation. "Interference with the public’s right of navigation is relative and the State may condone such interference by implied permission.” (Ibid.; People ex rel. Howell v Jessup, 160 NY 249, 255 [1899].) Defendants’ construction of the boathouse in public waters was brought to the State’s attention by the plaintiffs.[3] Neither party indicates the State has directed defendants to move the structure, although the State clearly could if it found the boathouse interfered with navigation or other public use.[4] *41 (Navigation Law § 32; Schwartz v Hudacs, 149 Misc 2d 1024, supra; People v Mould, 37 App Div 35, 40-42, supra.)
Even though none of the parties own the area where the boathouse now sits, could the plaintiffs have acquired an easement over the area by prescription? Can they arguably demonstrate the type of nonexclusive, continuous use of the area necessary to establish the same? (McLean v Ryan, supra, at 930.)
The case of Young v Scully (214 AD2d 905, 908 [3d Dept 1995]), in which the parties argued over rights to the use of a boat slip that was clearly erected on Water Authority lands, seems at first blush to imply they might. In Scully, the Court found the plaintiff had demonstrated the type of nonexclusive continuous use of the boat slip for more than 10 years necessary to establish an easement by prescription which claim could be asserted against the defendant therein. Further analysis of this case, however, requires a contrary conclusion.
First, there is no question that the plaintiffs cannot assert a claim of prescriptive easement versus New York State since it has not been named in this proceeding, and it is against public policy. (3 Warren’s Weed, New York Real Property, Lands Under Water, § 7.02.) "Thus, the general rule is that in the absence of statutory authorization, no prescriptive rights can be acquired by an individual in public waters.” (107 NY Jur 2d, Water, § 88.) In Scully (supra), the Water Authority had stipulated that the case could go forward, affecting the parties’ rights only, and not the rights of the Water Authority. There is no similar stipulation by the State of New York in this case.
Second, unlike Scully (supra), this case does not involve a well-defined area of use. While identified by an asserted littoral line extended, the area over which the plaintiffs claim an easement is open water. Thus, the Scully case is distinguishable.
*42 Lastly, the premise that the plaintiffs have a right of use over a specific portion of the unimproved navigable waters of Keuka Lake (assuming their littoral rights do not extend to this point) that is superior to these defendants or any other lake users, is untenable. To recognize such a claim of easement by prescription could lead to numerous upland owners claiming that they have certain boat launch patterns in the navigable portion of Keuka Lake, which independent of their littoral rights, gives them rights to open water superior to their neighbors or the general public. Such a" claim does not state a valid cause of action on the facts herein.
The plaintiffs’ request to amend their complaint to plead easement by prescription is also denied.
In summary, for the reasons stated above, the defendants’ motion to dismiss the plaintiffs’ complaint alleging violation of their ownership rights by deed is granted, and defendants’ motion to dismiss the plaintiffs’ complaint alleging violation of their littoral rights is denied. Further, the plaintiffs’ motion to amend their complaint to allege causes of action based on rights by adverse possession and/or prescriptive easement is denied.

. It was, as a result of a prior motion, determined by the court that a question of fact exists regarding whether the long lake method is the proper method for determining the parties’ littoral lines.

. But see, 107 NY Jur 2d, Water, § 6: "A riparian right is not an easement, but is incident to and is annexed to the land as part and parcel of it. It arises as an incident of ownership of the bank and does not depend upon ownership of the bed of the stream.”

. The plaintiffs apparently did seek the State’s assistance, and presented their position that defendants were violating their rights of access to the lake, which they can assert as members of the public. The outcome of that administrative proceeding is not before this court, and the plaintiffs chose not to name the State as a party to this action. (See, Schwartz v Hudacs, 149 Misc 2d 1024 [Ontario County 1990]; Smith v State of New York, 153 AD2d 737 [2d Dept 1989]; Navigation Law § 32.)

. Defendants argue that since the boathouse is in the navigable waters of Keuka Lake, the only one to bring suit is the State of New York. Generally, this is true (Knickerbocker Ice Co. v Shultz, 116 NY 382 [1889]), but *41 there are exceptions. The plaintiffs might arguably have included a cause of action alleging public nuisance, but plaintiffs would need to allege defendants’ boathouse actually injures navigation (White, Gratwiek & Mitchell v Empire Eng’g Co., 125 Misc 47, 51, supra), show special damages (Carvalho v Brooklyn & Jamaica Bay Turnpike Co., 56 App Div 522 [1900], affd 173 NY 586), and allege that the injuries to plaintiffs herein are peculiar from other members of the public utilizing the navigable waters of Keuka Lake. (Burns Jackson Miller Summit & Spitzer v Lindner, 59 NY2d 314, 334-335 [1983]; Little Falls Fibre Co. v Ford & Son, 249 NY 495, 505 [1928]; New York Cement Co. v Consolidated Rosendale Cement Co., 178 NY 167, 178-179 [1904]; Trustees of Town of Brookhaven v Smith, 188 NY 74, 87, supra.) Plaintiffs however, have not requested to amend their pleadings to assert this cause of action, and accordingly, the issue is not before the court.