THE PEOPLE OF THE STATE OF NEW YORK ex rel. ERIE RAILROAD COMPANY, Respondent, against STATE TAX COMMISSION, Appellant.

(Assessments 1918-1924, inclusive.)

Third Department, June 30, 1943.

*Nathaniel L. Goldstein, Attorney-General (Edward J. Grogan, Jr.,* of counsel), for appellant.

*Sayles, Flannery, Collin & Evans (Pierre W. Evans* of counsel), for respondent.

HILL, P. J.  Appeal by the State Tax Commission from orders which canceled special franchise assessments for the years 1918–1924, inclusive, levied against the Erie Railroad Company in connection with its bridge that crosses the Chemung River in the town of Chemung.  In the beginning many issues were litigated which, during the long years that have passed, have been abandoned or have settled themselves, leaving only the question as to the navigability of the river.  The decision of this question determines the right of the State to levy the assessment.  If it is navigable, it is a highway, and its crossing is subject to a special franchise tax; if not, no tax may be levied. The opinion, decision and findings of the referee and evidence are rich in the history and written and unwritten tradition of the locality for more than a century and a half.  The river, not affected by the tides, is formed by the confluence of the Tioga and Cohocton Rivers at Painted Post, flows through Corning and Elmira, crosses the State line into Pennsylvania, returns again into New York State and finally enters the Susquehanna just across the Pennsylvania line at Athens.  It is about forty miles long, thirty in the State of New York.

An emissary to negotiate with the Indian tribes en route from Wyoming, Pa., to Painted Post, N. Y., was able to navigate the lower twenty miles of the river, but not within the town of Chemung.  In 1793 the settlors in the neighborhood of Painted Post subscribed $1,500 to be used in clearing the river of shoals, logs, timber and stump jams, to permit the floating of produce to the Susquehanna and the sea.  Three steamboats, in about 1826, navigated the river to the vicinity of Elmira. One was burned through the explosion of its boiler occasioned by excessive stoking, the other two made no return trips.  About 1833 the Chemung Canal was constructed, connecting Painted Post with Seneca Lake and the river was dammed and canalized for about two and a half miles, furnishing an outlet for

produce previously lacking except by natural water courses. Shortly after the canal was built railroads came, lessening the demand for water transportation. Around the turn of the century wheat, livestock, lumber and other commodities were transported down the river from points westerly of the town of Chemung to the Susquehanna and thence to Baltimore. A directory of the city of Elmira published in 1868 says that the river is navigable for boats carrying from twenty to twenty-five tons from a point eighteen miles west of Elmira. Until about 1870 there were many rafts of lumber in flood seasons, upon which cabins were built for passengers, poultry, game and grain. The last houseboat or raft recorded was on June 11, 1900. After about 1870 the river has been used by rowboats and canoes which the findings say were utilized for traffic, fishing and trapping. The Legislature, by chapter 47 of the Laws of 1813 declared it to be a public highway, and in chapter 236 of the Laws of 1824 and chapter 21 of the Laws of 1826, dealt respectively with the construction of a dam and the repairs thereto, requiring that the structures were to be of a type to permit safe passage for rafts and arks " in common arking and rafting freshets in said river."

The most comparable case in the court of last resort in this State is *People ex rel. Lehigh Valley Ry. Co.* v. *Tax Comm.* (247 N. Y. 9) which deals with bridges across Cascadilla and Six Mile creeks within the city of Ithaca. The opinion states: " Both creeks are navigable streams, though only for small craft. Motor boats, rowboats, rafts and skiffs navigate the two streams above and below the crossings." A stream capable of floating to market single logs or sticks of timber during such a portion of the year as to make it useful as a highway is subject to a public easement, even if transportation may be accomplished down river only. (*Morgan* v. *King,* 35 N. Y. 454.) A stream is regarded as navigable which affords a channel for useful commerce without regard to the particular mode in which the use may be had " whether by steamboats, sailing vessels or flatboats." (*United States* v. *Holt Bank,* 270 U. S. 49.) Navigability is not destroyed because of occasional natural obstructions or portages, nor is it necessary that navigation continue at all seasons of the year, and it does not lose this characteristic even if it has fallen into disuse for a hundred years. " A hundred years is a brief space in the life of a nation; improvements in the methods of water transportation or increased cost in other methods of transportation may restore the usefulness of this stream." (*Economy Light Co.* v. *United States,* 256 U. S. 113, 124.)

Under these authorities the facts make the river navigable at the *locus in quo*. The judgments and orders should be reversed on the law and facts, with findings of fact reversed and new ones made as indicated in the formal decision.

BLISS, HEFFERNAN and SCHENCK, JJ., concur; CRAPSER, J., dissents and votes to affirm the order.

Judgments and orders reversed on the law and facts, with fifty dollars costs and disbursements.

The court reverses findings of fact numbers 30, 31, 55, 57, 58, 59, 60, 61 and 62, and disapproves conclusions of law numbered 2, 3, 4, 5, 6, 13 and 14. The court further finds that the Chemung River during the years 1918–1924 inclusive was navigable at the place where it was crossed by relator's railroad bridge in the town of Chemung; that the order and judgment entered upon this decision shall contain a provision that the franchise, right and permission granted by the State of New York to the Erie Railroad Company to construct, maintain and operate a railroad over the waters of the Chemung River in the town of Chemung was a special franchise in the years 1918–1924, inclusive, and that the relator should be assessed for this special franchise in the town of Chemung for the years mentioned in accordance with the terms of a stipulation entered into by the relator and the respondent State Tax Commission acting through the Attorney-General of the State, which stipulation is printed in the record on appeal beginning on page 5 thereof.