Richard S. Heller, J.
These claims seek recovery for the alleged appropriation of real property by the State. On April 2, 1947, pursuant to the provisions of chapter 862 of the Laws of 1936 and the acts amendatory thereof, there was filed in the *370 Chemung County Clerk’s office a map designated as Map No. 490 and titled “ Elmira Flood Protection Project, Section No. 2 Chemung River ” setting forth Parcels 780 and 781. The map shows the reputed owner of the property as the Elmira Water Board. The description contained on the map was published in the Elmira Advertiser, a newspaper printed and published in the City of Elmira on April 17, 1947.
The description sets forth Parcels 780 and 781 as the appropriation of two perpetual easements for the right to construct, reconstruct, maintain and operate walls, stream channel, riprap, work area, access road, drainage ditches, pipe lines, facilities of public and private utilities, appurtenances to all structures including the right to remove material, deposit material, grade, place and keep machines, tools and equipment with rights of ingress and egress “ in the improvement for purposes connected with the Flood Control Project ”. The description sets forth the northerly boundary line of both parcels as running various courses along the north bank of the Chemung River with the southerly boundary line of each parcel shown as running along a bank of the Chemung River on an island.
Each of the above-mentioned claimants is the owner of one or more parcels of improved real property fronting on the south side of Water Street and abutting either Parcel 780 or Parcel 781 on the south.
Each of the above-mentioned claims was filed on March 31, 1949. Each claimant alleged ownership of one or more parcels having a frontage on West Water Street and a depth extending ‘ ‘ to the Chemung River ” or “to the low water mark of the Chemung River ’ ’. Each claimant asserted that the extent of the taking was unknown and the area could not be defined from Map No. 490 and that the State was exercising acts of “ exclusive dominion over all the property of the claimant south of the line of the building on said claimant’s land ”.
Thereafter each of the above-mentioned claimants brought an action in the Chemung County Court pursuant to article 15 of the Real Property Law against the State of New York, the City of Elmira, and the Elmira Water Board. Each claimant alleged ownership of property fronting on the south side of Water Street and extending to the center of the Chemung River. Each claimant alleged title and possession for extended period of time and that there had been for a great many years an area of land extending from the south wall of each claimant’s building or buildings to the low water mark of the Chemung River. Each claimant alleged the filing of the claim against the State and that the State denied that the claimants had any claim for dam *371 ages for appropriation and that they were not entitled to prove any damages and that the claimants had no title to the lands appropriated.
These article 15 proceedings were tried together in the Chemung County Court before the Honorable Johít A. Mathews on September 29, 1953, at which trial the claimants appeared by Denton, Winding & Moseson, Esqs., Harry Moseson, Esq., and Lynn Keyser, Esq., of counsel, the State appeared by the Honorable Nathaniel L. Goldstein, Attorney-General, Douglas S. Eider, Assistant Attorney-General and Andrew G. Ulsamer, Esq., of counsel, and the City of Elmira and the Elmira Water Board appeared by George H. Winner, Esq. Subsequently, and prior to any decision by the Chemung County Court, the parties stipulated that the testimony taken and the exhibits received in the Chemung County Court trial should be submitted to this court for determination insofar as that record bears upon the issues raised by the claims filed in this court. Each claim filed herein seeks a money judgment by way of relief. Each complaint in the article 15 proceedings however, seeks a judgment declaring that the defendants named therein and every person claiming under them be barred from all claim to an estate or interest in the property described in each complaint and that each plaintiff is vested with an “ absolute and unencumbered title in fee ” to the property described in each complaint.
In the article 15 proceedings in the Chemung County Court, one complaint in which the plaintiff was Baco Corporation related to premises known as 241, 243-249 and 251-257 West Water Street and abstracts of title received in evidence showed conveyance of those premises to the named plaintiff. The premises known as 251-257 however are covered in Claim No. 29499 above and the premises known as 241 and 243-249 West Water Street are covered in Claim No. 29502.
Claimants assert that they had title respectively to various portions of Parcels 780 and 781 without specification as to the portions and that the State’s activities in filing the appropriation map and making available for construction by the Federal Government the property for a flood wall and exercising exclusive dominion within the terms of the easement of the area between the flood wall and the north boundary of Parcels 780 and 781, was a taking requiring the payment of compensation since this was not in the exercise of any rights of the State. On this aspect the claimants argue that the Chemung Eiver has not been used for navigation for a great many years and in any event even if it was a navigable stream, the activities of the State here were not related to navigation.
*372 The State contends that the Chemung River is a navigable stream and that its activities were within the boundaries of the bed of a navigable river and represented an exercise of the public easements in the navigable river requiring no compensation.
The claimants have failed to establish on this record that the Chemung River is not a navigable river. In Chase-Hibbard Milling Co. v. the City of Elmira (207 N. Y. 460, 462) in a case dealing with exactly the same area as involved in this lawsuit the Court of Appeals stated, ‘ ‘ In 1813, the Chemung river, then known as the Tioga river, was declared to be a public highway by an act of the legislature, which is still in force. ’ ’ That legislative enactment remains in force. Subsequently it was specifically held that the Chemung River is a navigable stream in People ex rel. Erie R. R. Co. v. State Tax Comm. (266 App. Div. 452, affd. 293 N. Y. 900). In the opinion of the Appellate Division, Third Department, the fact of navigability was fully reviewed as well as the legislative statement of navigability.
The court also finds that what the State has done here is a proper exercise of public powers over public waters to which private interests are required to yield and for which no compensation must be made. In People v. System Properties (281 App. Div. 433, 440) the court indicated the broad public powers over public waters as follows:
‘ ‘ The sovereign power of the State is not limited to regulation in the interest of navigation but extends to every form of regulation in the public interest, including the regulation of the use of the lake as a means of recreation and enjoyment and as a source of water power. We adopt as expressing our views the exposition of the scope of the State’s power written by Justice Bergan when he was at Special Term, in Niagara Falls Power Co. v. Duryea (185 Misc. 696, 705): 1 Merely because the power to act in the interests of navigation arises so often in litigation and is so often suggested as a form in which the sovereign power in public waters is to be exercised above private rights, it is not to be supposed that this is the only form in which public, powers are to be exercised over public waters and to which private interests may be required to yield. * * * It is the same 1 ‘ reserve power ”, I think, that Judge Finch referred to in Niagara Falls P. Co. v. Water P. &. C. Comm. (267 N. Y. 265, 276), when he used the expression ‘ ‘ the reserve power to preserve the water of Niagara river for commerce and navigation and in the interests of the public.” I am unable to distinguish the power of the State thus expressed, over public water in the public interest and its power in the interest of navigation. I do not think they *373 are distinguishable. ’ ” In the same case the Court of Appeals subsequently wrote (People v. System Properties (2 N Y 2d 330, 344): “ As to the existence of the sovereign power of the State as declared by the Appellate Division we have no doubt (see People v. New York & Staten Is. Ferry Co., 68 N. Y. 71). Lake George is a large (44 square miles) and important public body of water, title to which and sovereign power over which is in the State (Granger v. City of Canandaigua, 257 N. Y. 126, 130). The reach of that power in trust for the People is as great as the uses and possibilities of the lake for navigation, as a water-power reservoir and not excluding recreational uses ”.
The only remaining question here then is as to whether or not the State’s activities were carried on in the bed of the river where it had a right to so act without making compensation or, as the claimants contend, the State’s activities were actually on the upland. The court concludes that on this record the claimants have failed to establish that the area covered by the description and map and shown as Parcels 780 and 781 were not a part of the bed of the Chemung River.
The physical aspects of the situation as they existed in the early 1900’s is fully set forth in Chas-Hibbard Milling Co. v. City of Elmira (207 N. Y. 460, 462-464, supra). Until about 1915, the area in question constituted a channel of the Chemung River although the flow of water through this particular portion of the channel was controlled by gates at the westerly end of this channel. This channel of the Chemung River was utilized as a tailrace for a mill which was abandoned about 1915.
It is possible for riparian owners, which these claimants have established themselves to be, to benefit from the gradual diminution of the flow of water and obtain additional land by accretion. Here however, all that the claimants have been able to establish is that for an indefinite number of months and an indefinite number of years Parcels 780 and 781 have not been subject to a continuous flow of water. The fact that there was sometimes no water over this particular area does not establish that it did not constitute a part of the bed of the Chemung River. (People ex rel. Erie R. R. Co. v. State Tax Comm., 266 App. Div. 452, supra; Dunham v. Townshend, 118 N. Y. 281; Baird v. Campbell, 67 App. Div. 104, affd. 177 N. Y. 539.)
The court does not deem it necessary to consider at length the question of title since whether claimants were simply riparian owners which they have at least established themselves or owned title under the bed of the stream is immaterial. In either event the activities of the State in regard to Parcels 780 and 781 are a *374 proper exercise of the State’s power over public waters and the exercise of this power does not give rise to any right to compensation in these claimants.
The court has viewed the premises.
The claims herein should be dismissed and judgment may be entered in accordance herewith.