■ CARLTON SMITH et al., Appellants, v STATE OF NEW YORK et al., Respondents.—In an action, inter alia, (1) for a judgment declaring that title derived through an 1888 underwater land patent is invalid and that the patent does not allow the owner thereof to prevent the general public from enjoying the area and (2) to permanently enjoin the defendant East Island Association, Inc., from prohibiting the general public from utilizing the waters and beaches around East Island in the City of Glen Cove, the plaintiffs appeal from an order of the Supreme Court, Nassau County (Roberto, J.), dated November 20, 1987, which granted the cross motion of the defendant East Island Association, Inc., for summary judgment dismissing the action as against it, and denied the plaintiffs' motion for a permanent injunction.

Ordered that the order is modified by deleting the provision granting the cross motion of the defendant East Island Association, Inc., for summary judgment dismissing the action as against it and substituting therefor a provision denying the cross motion, and by deleting the provision denying the plaintiffs' motion for a permanent injunction and substituting therefor a provision granting that motion to the extent that the defendant East Island Association, Inc., is preliminarily enjoined from prohibiting the general public from utilizing the waters and beaches around East Island in the City of Glen Cove upon the condition that the plaintiffs file in the office of the Clerk of the Supreme Court, Nassau County, an undertak-

ing pursuant to CPLR 6312 (b) in the sum of $1,000, and serve a copy of the same upon the defendant East Island Association, Inc.; as so modified, the order is affirmed, with costs to the plaintiffs Carlton Smith and the Fishermen's Defense Fund payable by the defendant East Island Association, Inc.; and it is further,

Ordered that the plaintiffs' time to file and serve said undertaking is extended until five days after service upon them of a copy of this decision and order, with notice of entry.

The plaintiff Carlton Smith is the president of the plaintiff Fishermen's Defense Fund (hereinafter the Fund), which is an organization representing sport fishermen in the Long Island area. In June 1987, 16 members of the Fund were issued appearance tickets by the defendant East Island Association, Inc. (hereinafter the Association) for fishing in the area from Prybil Beach west to and including Matinecock Point and Dry Dock Place as they had for many years prior. The Association claimed title to the beaches and into the Long Island Sound for a distance of 600 feet or approximately 35 acres based upon a 1888 patent granted to Jennie Ropes. This patent, granted December 3, 1888, states in relevant part: "Excepting and Reserving to all and every the said People [of the State of New York], the full and free right, liberty and privilege of entering upon and using all and every part of the above described premises, in as ample a manner as they might have done had this power and authority not been given, until the same shall have been actually appropriated and applied to the purposes of Commerce by erecting a Dock or Docks thereon, or for the beneficial enjoyment of same by the adjacent owner and These Presents shall in no wise operate as a warranty of title".

The Association claimed to have acquired title to the land in question from the prior titleholder, Harbor Associates (hereinafter Harbor), which was a New York corporation dissolved by proclamation in 1972. The briefs and the record do not offer any illumination as to how the Association allegedly succeeded to Harbor's rights. Although a defendant in this action, the State of New York supports the plaintiffs' petition and, while adhering to its earlier view that the Ropes patent was a valid grant, it urges that the right to eliminate public access must be strictly construed against the grantee and notes that valid title is essential to the assertion of any aspect of the Ropes patent.

In *Harbor Assocs. v Asheroff* (35 AD2d 667), we found that

Harbor had established its ownership of the subject underwater land by proof of a chain of title derived through the 1888 Ropes patent or, alternatively, through a chain of title from the County Treasurer's tax deed which is conclusively presumed regular after two years. Our 1970 determination that title was properly in Harbor does not resolve the issue of the Association's title. Although the hearing court concluded that the Association derived its title from Harbor, there is nothing in the record to substantiate this assertion and indeed, even the Association fails to address the issue of how and under what circumstances it received title. In this regard, it is noteworthy that Harbor was dissolved by proclamation in 1972, two years following this court's determination, and there is no indication that it ever transferred its title in the land to the Association or anyone else. This is reflected by the fact that the title searcher's report shows title only in Harbor's name and states that Harbor owes franchise taxes.

Logic mandates that if the Association is without title to the land, it must also be without the power to issue summonses to the public who traverse and fish in the area. As the state of title to these underwater lands is unclear from the record, an award of summary judgment to the Association was improper pending a determination of the ownership of the land in question. Accordingly, under the circumstances in order to preserve the status quo the plaintiffs should be granted a preliminary injunction pending resolution of this matter (see, CPLR 6301; *Koursiaris v Astoria N. Dev.*, 143 AD2d 639; *Albini v Solork Assocs.*, 37 AD2d 835).

The plaintiffs next assert that the land surrounding East Island, also known as Morgan's Island, attracts and supports a diverse population of fish life and that fishing in the area in unequalled. They note that the exclusion of the public from enjoying the area which they have lawfully enjoyed for over 100 years would constitute an impermissible impairment of the public interest.

As was declared in *Illinois Cent. R. R. v Illinois* (146 US 387, 452-453), "abdication of the general control by the State over lands under the navigable waters * * * is not consistent with the exercise of that trust which requires the government of the State to preserve such waters for the use of the public. The trust devolving upon the State for the public, and which can only be discharged by the management and control of property in which the public has an interest, cannot be relinquished by a transfer of the property. The control of the State for the purposes of the trust can never be lost, except as

to such parcels as are used in promoting the interests of the public therein, or can be disposed of without any substantial impairment of the public interest in the lands and waters remaining" (see also, Marba Sea Bay Corp. v Clinton St. Realty Corp., 272 NY 292, 296; Tiffany v Town of Oyster Bay, 234 NY 15, 20, 21; People v Steeplechase Park Co., 218 NY 459).

In the instant case, the court erred when it failed to take into account the public benefit which will be lost if the Association is permitted to exclude the public from this area used for over a century for fishing and other recreational activities. While the Association is accurate when it asserts that the State may convey a fee interest in lands under water to an individual, the contemplated use by the grantee or his successors in interest must comport with the best public use and not be injurious to the public good (see, Matter of Long Sault Dev. Co., 212 NY 1, 8, 9). Additionally, this fee interest may be revoked by the State when the uses proposed are not in conformity with the public trust doctrine. This doctrine grows out of the common-law concept of the jus publicum, the public right of navigation and fishery which supersedes a private right of jus privatum (see, Lewis Blue Point Oyster Cultivation Co. v Briggs, 198 NY 287, 292, 293; Coxe v State of New York, 144 NY 396, 406, 407; 3 Warren's Weed, New York Real Property, Land Under Water, §§ 2.02, 3.05 [4th ed]).

As there is no indication within the record as to the manner in which the Association "appropriated" this property or as to the intended use, the court erred when it dismissed the plaintiffs' action without ascertaining the impact this would have on the public interest.

Finally, the Association correctly asserts that only the State has the power to revoke a patent (see, Saunders v New York Cent. & Hudson Riv. R. R. Co., 144 NY 75). Therefore, if it is determined upon a trial that the Association is the owner of the lands in question and that the intended use is contrary to the public interest, it would be incumbent upon the State and not the plaintiffs to have this patent terminated for the public good. Mangano, J. P., Brown, Eiber and Sullivan, JJ., concur.