[615 NYS2d 788]

ADIRONDACK LEAGUE CLUB, INC., Appellant-Respondent, v SIERRA CLUB et al., Respondents-Appellants, and THOMAS KLIGERMAN et al., Respondents.

Third Department, August 18, 1994

APPEARANCES OF COUNSEL

*Shamberg, Marwell, Cherneff, Hocherman, Davis & Hollis,*

P. C., Mount Kisco *(Stuart R. Shamberg, John S. Marwell* and *Adam L. Wekstein* of counsel), and *Bertine, Hufnagel, Headley & Zeltner, P. C.,* Bronxville *(Peter K. Bertine* and *Frank M. Headley, Jr.,* of counsel), for appellant-respondent.

*Whiteman, Osterman & Hanna,* Albany *(Carolyn Dick* and *Philip H. Gitlen* of counsel), for Sierra Club, respondent-appellant.

*G. Oliver Koppell, Attorney-General,* Albany *(Val Washington, Peter H. Schiff* and *James A. Sevinsky* of counsel), for State of New York, respondent-appellant.

*Neil F. Woodworth,* Lake George, and *John W. Caffry, Glens Falls,* for Adirondack Mountain Club, Inc., respondent-appellant.

*Bartle, McGrane, Duffy & Jones,* Troy *(Nancy E. Jones* of counsel), for Thomas Kligerman and others, respondents.

*Proskauer, Rose, Goetz & Mendelsohn,* New York City *(Robert J. Kafin* of counsel), for Robert Wolff, respondent.

*Bond, Schoeneck & King,* Syracuse *(H. Dean Heberlig, Jr., John S. Ferguson* and *Thomas M. Shephard* of counsel), for New York Blue Line Council, Inc., and others, *amici curiae.*

*Jeffrey H. Kirby,* Glenmont, for New York Farm Bureau, Inc., *amicus curiae.*

**OPINION OF THE COURT**

CASEY, J.

In June 1991, the individual defendants, all members of defendant Sierra Club, traveled in two canoes and a kayak down the South Branch of the Moose River in the Adirondack Mountains. The river begins at Little Moose Lake in Hamilton County and flows to its confluence with the middle and main branches, which are in turn part of a larger river system draining into the Black River and Lake Ontario. Approximately 12 miles of the trip passed through land owned by plaintiff, a private club consisting of about 400 members which owns about 50,000 acres in the Adirondack Mountains and has for over 100 years attempted to bar the public from navigating the river. According to evidence submitted by defendants, about 76% of the segment of the river that runs through plaintiff's property is easily paddled by novice canoeists and the remainder of the river requires intermediate

skill. The depth of the Moose River varies with the seasons, with an average depth of three to four feet. The individual defendants claim that they entered and exited the river on land owned by defendant State of New York. Defendant Thomas Kligerman advised plaintiff about a week prior to the trip that he and four others would be making this trip. There was no response by plaintiff, but teams of observers and a hovering airplane did witness the trip on behalf of plaintiff. On the approach to plaintiff's land, the individual defendants were confronted with signs suspended over the river itself and posted on the shore warning them that they were entering a private park and should leave. Occasionally, the individual defendants ran aground in shallow places and exited their boats and walked on the river bed to "line" through these places and to scout for rapids. They claim, however, that at no time did they leave the exposed riverbed and enter the vegetated upland or go above the mean high watermark of the river.

Plaintiff commenced this action against the Sierra Club, its local affiliate, and the individual defendants seeking compensatory and punitive damages for trespass. Plaintiff also sought permanent injunctive relief and a declaration that the portion of the river at issue is nonnavigable. The State and Adirondack Mountain Club, Inc. (hereinafter ADK) intervened in the action as defendants. The State interposed a counterclaim that the signs erected by plaintiff constituted a public nuisance and, thereafter, moved for summary judgment on its counterclaim. The Sierra Club and ADK also moved for summary judgment, joining the State in its claim that the applicable section of the Moose River is navigable as a matter of law. Plaintiff cross-moved for partial summary judgment, contending that the river is not navigable and that the individual defendants committed a trespass on its lands regardless of any determination of the river's navigability.

Supreme Court denied the various motions for summary judgment, concluding that the test of navigability should be reformulated from a strictly commercial use test to a test that included recreational use. Supreme Court held that under the reformulated test there was an issue of fact as to the navigability of the South Branch of the Moose River which precluded summary judgment. Supreme Court also held that plaintiff failed to establish that the activities of the individual defendants took place on land lying above the high watermark.

Cross appeals from the court's order have been filed by plaintiff, the Sierra Club, ADK and the State.

The central issue involved in this case, as correctly noted by Supreme Court, is whether that segment of the South Branch of the Moose River which flows through plaintiff's property is a navigable waterway, which is the criterion that defines the public's right of use *(see, Fulton Light, Heat & Power Co. v State of New York,* 200 NY 400, 412). A waterway is navigable in law if it is navigable in fact *(see, People v System Props.,* 281 App Div 433, 444, *mod* 2 NY2d 330), and a determination of whether a waterway is navigable in fact "depends upon the purpose for which the definition is needed" *(Sawczyk v United States Coast Guard,* 499 F Supp 1034, 1038). Even if a waterway is not navigable by boats or rafts, it may still be capable of floating logs or timber. Consequently, the rule developed that a river is navigable in fact if it "is capable, in its natural state and its ordinary volume of water, of transporting, in a condition fit for market, the products of the forests or mines, or of the tillage of the soil upon its banks" *(Morgan v King,* 35 NY 454, 459). Other courts have stated the test in slightly different terms *(see, e.g., Sawczyk v United States Coast Guard, supra,* at 1038 [navigable if it is " 'used or (is) susceptible of being used, in (its) ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water' "]; *Van Cortlandt v New York Cent. R. R. Co.,* 265 NY 249, 255 [navigable if " 'in its natural and ordinary condition (it) affords a channel for useful commerce' "]).

As recognized by Supreme Court, there has been an undisputed decrease in the use of waterways as a means of transporting logs and other goods, and a corresponding increase in the use of those waterways for recreational purposes. The Legislature has recognized that in recent years recreational activities are making new and greater demands on lakes and streams for boating and other recreational activities (ECL 15-0103 [5]). The Legislature has also declared it to be the policy of the State to conserve and develop the waters of this State for all public beneficial uses, which include use for recreational purposes as well as commercial purposes (ECL 15-0105 [2], [3]). The legislative findings and declarations of policy support Supreme Court's conclusion that the common-law standard for navigability based exclusively on commercial uses is an anachronism.

Rather than abandon the standard, however, we are of

the view that the recreational uses of a stream should be considered as relevant evidence of the stream's suitability and capacity for commercial use. For example, under the Federal Power Act, which defines a stream's navigability in terms of its use for transportation of persons or property in interstate or foreign commerce, evidence of recreational boating, including use by canoeists, can demonstrate a stream's availability for commercial navigation *(see, State of New York ex rel. New York State Dept. of Envtl. Conservation v Federal Energy Regulatory Commn.*, 954 F2d 56, 61-62). As recognized by the Second Department in *Fairchild v Kraemer* (11 AD2d 232, 235), "The fact that a stream has been used for pleasure boating may be considered on the subject of the stream's capacity and the use of which it is susceptible" *(see also, People ex rel. New York Cent. R. R. Co. v State Tax Commn.*, 258 App Div 356, 360, *affd* 284 NY 616). We conclude, therefore, that the evidence in the record of the historic use of the South Branch of the Moose River for logging and the evidence of its more recent use for recreation by canoeists are both relevant to the issue of navigability.

The record reveals that the South Branch of the Moose River was heavily used over the course of at least 50 years for floating logs to market. As early as 1895, nonmembers of plaintiff used the river for logging, which caused a controversy that was never judicially determined. Nevertheless, about the turn of the century the Gould Paper Company (hereinafter Gould), an owner of large tracts of timberland above plaintiff's property, raised the issue of floating its logs and using "the Moose as a public highway". Plaintiff made an arrangement with Gould "to run logs down the South Branch of Moose River, each party to reserve their rights as to the use of said river as a public highway". In a later annual report, plaintiff acknowledged that it had done well in avoiding "tedious, expensive and doubtful litigation" over the river's legal status. The reservation of rights was included in every subsequent contract with Gould and two other parties, and Gould continued to float its logs to market on the South Branch of the Moose River. The last log drive took place in 1948.

Plaintiff contends that the log-driving season lasted no more than a few weeks each year and that the current was unpredictable, and impeded by rocks and rapids. The existence of such impediments and periodic fluctuations in flow does not preclude a finding of navigability *(see, Morgan v King*, 35 NY 454, 459, *supra; see also, Matter of Niagara Falls Power Co. v*

*Water Power & Control Commn.*, 267 NY 265, 270, *cert denied* 296 US 609). In any event, the limited logging season may have been due in part to plaintiff's requirement that the logging cease by a specific date. As acknowledged by plaintiff's own historian, the South Branch of the Moose River was a "major driving stream", one of the top five in the Adirondacks. Plaintiff relies upon evidence that a number of dams were built along the river and its tributaries to support its claim that the river has no commercial utility in its natural state. Only the remains of a few of the structures exist today, and there is little evidence about how the dams were used. In *Morgan v King (supra,* at 460), the Court of Appeals found that the Raquette River was not capable of being used as a public highway, but was susceptible of being used to float logs by the expenditure of public moneys for improvement. In this case, however, there is no evidence that the South Branch of the Moose River could not have been used to float logs without the dams. Nor is that the only reasonable inference to draw from the fact that dams were used, for it is also likely that the dams were used merely to improve the river's efficiency, so that each drive could be completed within the time prescribed by plaintiff. It is also significant that for many years plaintiff imposed a contractual prohibition on the construction of dams and required the loggers to use the natural flow of the river.

The river's capacity for floating logs is supported by the recreational use of the river by canoeists. Based upon photographs of selected portions of the river and the opinion of its fluvial geomorphologist, plaintiff claims the river is not canoeable. The fact remains, however, that the individual defendants and others, who are experienced but not necessarily expert canoeists, including one of plaintiff's members, have successfully navigated the section of the river at issue in canoes. Based upon the undisputed evidence of the river's historic use as a major log-driving stream for some 50 years and its recent use by recreational canoeists, we conclude that the South Branch of the Moose River is navigable in fact. The dissent's conclusion that a question of fact exists is based upon speculation and the subjective opinions of plaintiff's historian and another expert which, in our view, are insufficient to meet plaintiff's burden in light of the undisputed objective evidence of the river's actual use for logging and recreational purposes *(see, Zuckerman v City of New York,* 49 NY2d 557, 562).

■ Plaintiff contends that a finding of navigability is precluded by a prior determination of the Board of the Black

River Regulating District, which included a finding that the South Branch of the Moose River is not navigable. The determination was initially confirmed by the Fourth Department, but the judicial proceeding was ultimately dismissed as moot due to subsequent legislation *(Matter of Adirondack League Club v Board of Black Riv. Regulating Dist.,* 275 App Div 618, *revd* 301 NY 219). Assuming that the determination was the result of a quasi-judicial administrative proceeding *(see, Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271, 276, *cert denied* 488 US 1005), plaintiff has failed to demonstrate that the finding of nonnavigability was essential to the determination, which is an element of plaintiff's collateral estoppel claim *(see, Ryan v New York Tel. Co.,* 62 NY2d 494, 500).

Based upon our finding that the evidence is sufficient as a matter of law to establish navigability, the public has certain rights in the South Branch of the Moose River. Pursuant to the public trust doctrine, the public right of navigation in navigable waters supersedes plaintiff's private right in the land under the water *(see, Smith v State of New York,* 153 AD2d 737, 740). Plaintiff contends that the public right of navigation is limited to riding in boats and does not include the right to get out of a canoe and walk in the bed of the river to guide the canoe through shallow water, avoid rocks or portage around rapids. According to plaintiff, the absence of any case law specifically including such activities in the public right of navigation establishes that no such right exists. Defendants contend that the public right of navigation includes the right to engage in reasonable activities that are incidental to and necessary for navigating the river. The absence of case law, according to defendants, is the result of no one ever having previously claimed that the public right of navigation did not include the use of the river bed to portage or engage in other activities incidental to and necessary for navigation. We agree with defendants.

■ A navigable river or stream is a public highway *(People v New York & Ontario Power Co.,* 219 App Div 114, 116; *see, Fulton Light, Heat & Power Co. v State of New York,* 200 NY 400, 412, *supra),* and its navigability is not destroyed because of occasional natural obstructions or portages *(People ex rel. Erie R. R. Co. v State Tax Commn.,* 266 App Div 452, 454, *affd* 293 NY 900). It logically follows, therefore, that the public's right to navigate includes the right to use the bed of the river or stream to detour around natural obstructions and to portage if necessary. The case of *Stewart v Turney* (237 NY 117),

relied upon by plaintiff, does not hold to the contrary, for the activities in that case, which occurred on the foreshore below the high watermark of Cayuga Lake, were not in furtherance of navigation on the lake. The individual defendants in this case submitted evidentiary proof in admissible form to demonstrate that all of their activities were limited to the bed of the river below the mean high watermark and that all of their activities were incidental to and necessary for navigation of the river. Plaintiff, therefore, is not entitled to summary judgment on its trespass cause of action.

The State asserts a cause of action against plaintiff which alleges that the posting of the South Branch of the Moose River constitutes a public nuisance which must be enjoined. We are of the view that the State's claim is premature. Plaintiff acted in a good-faith belief that the river was not navigable and, therefore, not subject to any public right. There is nothing in the record to suggest that plaintiff will continue to post the river or otherwise interfere with the public right of navigation now that we have determined that the river is navigable. We conclude, therefore, that the appropriate remedy is a declaratory judgment.

YESAWICH JR., J. (concurring in part and dissenting in part). We agree that navigability should be determined by reference to the established benchmark of commercial utility, and that, due to the decrease in actual commercial use of waterways in recent years, recreational use must also be considered insofar as it provides evidence that a river would, in fact, be capable of commercial use. We also concur in the majority's holding with respect to plaintiff's collateral estoppel argument. Nevertheless, we are of the opinion that summary judgment on the issue of navigability is inappropriate at this time, due to the conflicting testimony with regard to both commercial and recreational uses to which the South Branch of the Moose River is suited.

To support its claim of nonnavigability, plaintiff has proffered sworn testimony from an expert historian who, on the basis of a review of pertinent literature, opines that log driving on the South Branch of the Moose River would not have been possible without the use of dams to augment the natural flow of the river (see, Morgan v King, 35 NY 454, 459 [waterway is navigable if capable of carrying products to market in its natural state and ordinary volume of water]; De Camp v Thomson, 16 App Div 528, affd sub nom. De Camp

*v Dix*, 159 NY 436). Defendants counter that most of the dams were located on tributaries and were used to get the logs *to* the South Branch of the Moose River; it is undisputed, however, that three of the damsites were on the river itself and appear to have been utilized to regulate its flow. Plaintiff's expert also claims that, in 1903, a New York report noted that "large volumes of impounded waters were 'required' for Moose River log driving". Although defendants rely heavily on a contract entered into between plaintiff and Gould Paper Company, which prohibited the construction of new dams, that contract, importantly, did not prevent the use of dams which were already in place. Admittedly, there is no conclusive evidence in the record demonstrating that the river was incapable of floating logs without employing dams. It is also true, however, that defendants have produced no hard evidence establishing that the river could indeed be used in this manner without artificial enhancement. In sum, it cannot be said that defendants' submissions warrant a declaration of navigability, as a matter of law, on the basis of actual commercial use.

Given the bedrock fact that there is no convincing evidence that the river has actually been used, in its natural state, for any commercial purpose, its suitability for recreational use becomes more significant. But, in this area, too, there is a sharp factual dispute. The record contains the affidavits of several experts who, having engaged in detailed scientific studies of the volume and flow of the river, express conflicting opinions as to its ability to support recreational use, particularly canoeing. Both sides have offered testimony, to the same effect, by expert canoeists as well. And, while the individual defendants did travel the river in canoes and a kayak on one occasion, plaintiff's geologist, who also spent time on the river taking measurements, attests that, on the basis of the low depth, low discharge, high gradient, and high width to depth ratios found along much of the river's length, it would not be useable for canoeing during most of the year.

Plaintiff has also furnished an affidavit from a whitewater rafting professional, who, after attempting to travel the river by canoe, recounted several long portages, necessitated by low water levels, waterfalls and rapids, and opined that due to the low water levels during the summer months, coupled with unpredictability of the flow, the river would not be suitable for any sort of commercial rafting or canoeing operation, and that it is "not navigable for recreational purposes". This expert

observed that for four to five miles the river was wide and shallow with a steep gradient, making passage "difficult, if not impossible". Yet another person who attempted to canoe the river avers that his group had to carry their canoes, either wading or portaging, for approximately 75% to 80% of the distance. These accounts, along with the expert testimony as to flow rates and riverbed characteristics, in our view, cast sufficient doubt on defendants' assertions that the river is suitable for recreational use to require denial of summary judgment on the question of navigability.

MERCURE and PETERS, JJ., concur with CASEY, J.; YESAWICH JR., J., and CARDONA, P. J., concur in part and dissent in part in a separate opinion by YESAWICH JR., J.

Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied the motions for summary judgment by defendants Sierra Club, Sierra Club (Atlantic Chapter) and Adirondack Mountain Club, Inc. on their causes of action seeking declaratory relief; motions granted to that extent and it is declared that the South Branch of the Moose River, as it passes through plaintiff's property, is a navigable river subject to the public's right of navigation; and, as so modified, affirmed.