Bellacosa, J.
(dissenting). My judgment of this case coincides with that of former Justice Casey expressed for the majority ruling at the Appellate Division (201 AD2d 225). Thus, I respectfully dissent and vote to affirm the decision that granted summary judgment in favor of the defendants and interveners, including the State of New York. Enough conclusive evidence was amassed to resolve this case at the summary judgment juncture, without the necessity of a trial.
One facet of this case is relatively easy for me. I agree with the governing law principle articulated in Judge Ciparick’s opinion for the Court. The traditional commercial viability test, used to determine navigability-in-fact of a waterway, survives (see, Morgan v King, 35 NY 454, 459), and is updated to include a modernized influx of realistic recreational usage (see, State of New York ex rel. New York State Dept., of Envtl. Conservation v Federal Energy Regulatory Commn., 954 F2d 56).
The recreational appreciation provides legitimacy to a vital and progressive utilization that is itself commercially cognizable and valuable in this day and age. This commonsense definition of navigability-in-fact for the Adirondack’s South Branch *609 of the Moose River thus evolves as a nonradical standard for today’s law climate and environmental culture (see, Douglaston Manor v Bahrakis, 89 NY2d 472, 481).
The harder part of arriving at a decision in this case, as I see it, is the application of the refreshed rationale to the prodigious record, developed by the contending parties over the years of this long-standing dispute. I can fully appreciate that before finally resolving any lawsuit, especially one suffused with enormous practical and precedential consequences, decision-makers would yearn for more definitive and deeper levels of deliberative excursion and adversarial fact exploration.
Yet, some cases materialize and qualify for a more summary decisive modality by their nature and through the ordinary calculus of judicial sifting for genuine triable issues of fact. This is accomplished within the finite universe of a case record. The moment of decision in such exceptional situations can coalesce when essential.matter can be sorted out from satellite ingredients. The judicial process is then allowed reliably to seize the moment and boldly risk a nontrial, summary judgment resolution, in the justifiable discharge of its responsibility (see, e.g., Stringfellow’s of N. Y. v City of New York, 91 NY2d 382; Romano v Stanley, 90 NY2d 444 [both cases dealing with use of experts’ proofs in a summary judgment context]).
The above-stated rubrics are persuasive for how this case may be decided. In addition, the Principle of Occam’s Razor wisely warrants affirmance here on its theory that simpler solutions usually supply the more likely correct answer. Thus, I am led to the less complicated, matter-of-law formula. Avoiding the trial step toward a well founded decision is appropriate to this unique procedural configuration and controversy. Summary judgment is a thoroughly suitable procedural remedy for dealing with this somewhat esoteric subject matter; CPLR 3212 is hardly an insupportable shortcut under these circumstances (see, e.g., Stringfellow’s of N. Y. v City of New York, supra).
I acknowledge, however, that reasonable minds see records and cases differently, and adjudicate them with nuanced refinements. Therefore, our respective analytical approaches occasionally reach varying conclusions not only as to the method of resolution of a case, but also as to the substantive result and justification for it. Demonstrably, we five Judges have each deeply examined and seriously considered together the same record materials. Still, my deliberative journey ends at a different destination from the majority.
*610 My vote is based on my over-all assessment that no germane issues persist that might materially affect the outcome of this litigation. The pivotal difference between us, as I see the matter, is whether highlighted issues are either necessary or essential to further trial disputation. My colleagues emphatically conclude that more is needed; I, on the other hand, am satisfied that a decision for this case is justified at this procedural crossroads.
Summary judgment proofs have been assembled by the parties and interveners and the submissions of various amici curiae. They amass comprehensive, excellent exhibits, unassailable documentations, experts’ proofs and massive historical detail and tracings. The record is overflowing with impressive maps, photographs, documents and experts’ affidavits and testimony, as well as the sworn statements of individuals who have studied the river and its history, including some who have recently navigated its full course. While I am able to satisfy myself that enough has been adduced here concerning the essentials to rule on this controversy, I emphasize that my view is based not merely on some single factor nor on the accumulated quantity of proof, but rather on the substantial record and on the substantive quality of all its features.
Former Justice Casey correctly summarized for the majority at the Appellate Division that “undisputed” evidence exists to warrant a matter-of-law determination that the South Branch of the Moose River is a navigable-in-fact waterway (201 AD2d 225, 231, supra). In particular, moreover, I credit the Appellate Division majority’s double-barreled justification that “[biased upon the undisputed evidence of the river’s historic use as a major log-driving stream for some 50 years and its recent use by recreational canoeists, * * * the South Branch of the Moose River is navigable in fact” (id., at 231).
We all agree that an early beacon light is the Morgan case (supra). It is of a different age, but still helps to rank this river, in a legal sense, and as a matter of law. The Morgan case, the documented history of this river and this summary judgment record, thus, converge as a reliable rudder for judicial closure of this well and thoroughly fought encounter.
The documented and varied uses of this river, principally for logging in the past and for recreational purposes more recently, chart its natural capacity for historical and economical acclimatization to practically utilized uses for all time. Society and the law recognize that the river’s uses may vary from time *611 to time, and season to season. That, however, is not a dispositive detail, standing alone (see, Morgan v King, supra, at 459). Frankly, that is part of the nature and timelessness of the river.
Likewise, evidence that some dam-like structures were used along the river, especially during the river’s log-driving history in the first half of this century does not overcome the potent conclusion that the river, on its own, was a naturally created force and waterway. Some degree of human augmentation to the particular practical use may be viewed as naturally ancillary and appropriately incidental, but that should not negate navigability-in-fact, as a matter of law on this record.
Moreover, the successful voyage over the section of the river at issue by several recreationalists, including individual defendants in this case — charged by plaintiff with being trespassers — dramatically demonstrates the river’s renaissance as an eclectically utilized water course in this second half of the twentieth century. Indeed, a member of plaintiff Adirondack League Club — which sues to enforce its private and exclusive use of its part of the river (compare, Douglaston Manor v Bahrakis, supra) — also periodically traversed the river. The club seeks to preserve that privilege only for its members to the exclusion of all others, including the public easement users, that the club’s lawsuit would adjudicate as trespassers. To be entitled to that ultimate declaration and injunction, it has to prove the non-navigability-in-fact of this river. This customary plaintiff’s burden, though not an issue at this summary judgment stage of litigation, is importantly framed for the now ordered trial by the context of the history and the varied expeditions. They tend to show that the river still embodies its erstwhile navigational commercial logging use heritage, in conjunction with its evolved and present-day uses as a navigable body of water for recreational purposes, as well. Additional expert evidence and a trial credibility contest will not, in my view, materially change this cogent amalgam of undisputed facts and essential evidence.
Impressively in relation to this case, the natural sciences, in special subcategories of fluvial geomorphology, archeology and economics — as those disciplines bear on private and public ownership of land, waterways and riparian rights — swirl together into common basins of law and public policy (see, ECL 15-0105 [2], [3]; see also, Wilson, Consilience, The Unity of Knowledge, at 5, 61, 64 [Knopf 1998] [“In an early letter to his friend Marcel Grossmann (Einstein) said, ‘It is a wonderful *612 feeling to recognize the unity of a complex of phenomena that to direct observation appear to be quite separate things.’ ”]). In a related sense, incontrovertible proven phenomena from this record provide a sufficient confluence to support my assessment, and that of the Appellate Division, that a summary judgment stage decision ought to be upheld.
Life, law and nature are filled with paradoxes (see, The Paradoxes of Legal Science in Cardozo, Selected Writings of Benjamin Nathan Cardozo [Margaret E. Hall ed 1947]). Facts can be epistemologically elusive, and people (particularly Judges and lawyers) often struggle with inexplicable puzzlements which seem persnickety and even nettlesome. Most of us prefer, instead, levels of certainty and tidiness in life, law and nature. I appreciate that the South Branch of the Moose River, the law and litigation affecting the river’s future and use, and this record may together be perceived as a frustrating roil of elusiveness. Yet, the judicial role and responsibility are to confidently decide, as best they can, based on what has been adduced when the decisive moment dawns.
For a closing note, I underscore that neither my dissenting view nor the majority’s prevailing direction for a trial, should be interpreted as a precedential Waterloo for either environmental camp in this dispute. Whatever the outcome, including after evidentiary, factual, credibility and expert witness j oustings at the ordered trial, the unique role of the judicial process is to provide a fair, objective, measured and particularized forum for resolution of this donnybrook. Stare decisis aside in the long haul of history, the Law of Nature will ultimately determine whether the Moose River is navigable, no matter what litigants, lawyers, judges or juries may say on the subject.
Respectfully, my vote is to affirm the order of the Appellate Division.
Judges Smith, Wesley and Denman* concur with Judge Ciparick; Judge Bellacosa dissents and votes to affirm in a separate opinion; Chief Judge Kaye and Judge Levine taking no part.
Judgment of Supreme Court and order of the Appellate Division brought up for review modified, etc.

 Designated pursuant to NY Constitution, article VI, § 2.